## In re COLEMAN.

(Circuit Court of Appeals, Second Circuit.   March 20, 1905.)

### No. 26.

1. BANKRUPTCY—PROPERTY OF BANKRUPT—INSURANCE POLICIES—SURRENDER VALUE.

Where certain insurance policies belonging to a bankrupt had no cash surrender value, but they had a collateral loan value and a paid-up insurance value, they had an inchoate value to which the bankrupt's trustee was entitled as property, which, prior to the filing of the petition, the bankrupt could have transferred, etc.

2. SAME—BANKRUPT ACT—CONSTRUCTION.

Bankr. Act July 1, 1898, c. 541, § 70, subd. 5, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451], authorizing a bankrupt to retain insurance policies having a cash surrender value by paying the amount thereof to the trustee, does not by implication deprive the trustee of the right to policies having an inchoate, but no cash surrender, value.

3. SAME.

Where a bankrupt held a life insurance policy, payable to his wife, if living, otherwise to his executors, administrators, and assigns, and, though such policy had no cash surrender value, the insurer voluntarily agreed to pay a certain sum for the policy, on condition it received a release from the bankrupt and his wife, the bankrupt's interest, though contingent, was assignable, and his trustee was entitled to sell such interest and to have the bankrupt assign the same.

In Error to the District Court of the United States for the Eastern District of New York.

The following is the opinion of the court below:

THOMAS, District Judge.   The three policies, each for $10,000, issued by the New York Life Insurance Company on January 30, 1901, in the very nature of the contract, had no cash surrender value, and, in fact, had none at the time of the adjudication of Coleman as a bankrupt on November 20, 1902.   Mr. Howard, officially connected with the insurer, testified that on January 30, 1903, each policy would have a paid-up value of $1,000, and could be used by the company as collateral for a loan to the extent of $869.90.   While the policies could not be converted into values on the day of adjudication, November 20, 1902, yet, without further payment, they would, on January 30, 1903, have a certain surrender value for paid-up insurance, and a certain value as collateral security by the company.   They had an inchoate value.   Thus each policy had a substantial value as property, and the trustee is entitled to the benefit of it.   Therefore he may take the $750 deposited in court in lieu of the three policies.

Section 70, subd. 5 (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]), contains a proviso which is intended to modify the right of the trustee to take title to policies by enabling the bankrupt to retain policies that have a cash surrender value by paying the amount thereof to the trustee.   This is a privilege conferred upon the bankrupt respecting the class of policies that have an ascertainable cash value.   In such case the rights of the parties

are specifically stated. The value of such a policy is easily ascertainable, and the bankrupt is given an opportunity to pay the ascertained value and keep the policy. This peculiar favor to the bankrupt is a limitation upon the trustee's right, but the proviso is not to be regarded as the sole grant of power to the trustee to take policies not exempt. The trustee's capacity to take this and other property is found in the portion of the statute, whereby he is vested with the title to all "property which, prior to the filing of the petition, he [bankrupt] could by any means have transferred or which might have been levied upon or sold under judicial process against him." This is sufficiently comprehensive to carry to the trustee the policies in question. If a tontine policy have but a day to run after the adjudication in bankruptcy, the trustee should not be deprived of it because it has no technical cash surrender value. It is difficult to conceive that Congress so intended. Indeed, the evidence of Mr. Howard shows that the New York Life Insurance Company does not issue at present policies that have a cash surrender value. If that be the practice of other companies, an intended bankrupt could withhold his property from his creditors in bankruptcy by investing it in insurance, if the bankrupt's present contention prevail. The proviso in question was an exception, intended to be helpful to the bankrupt in a certain class of cases, and the only class which Congress could regulate definitely, and it may not be used to defeat the right of the trustee to any policies save those subjected to specific treatment. The contention made by the bankrupt would convert a proviso into a restricted grant of power, rather than a qualification of such grant, and make the exception more effectual than the body of the statute.

The final inquiry relates to the policy for $5,000 issued May 26, 1900, by the Equitable Life Assurance Society, upon the bankrupt's life, payable to his wife, Ida M. Coleman, if living at the assured's death, and, if not, then to the assured's executors, administrators, or assigns. This policy was issued on January 30, 1870, for the benefit of the bankrupt's first wife, and presumably inuring to him upon her death. The premium stipulated is $99.45 per annum. The insurer will pay voluntarily, but by no obligation, $939.43 for the policy, but very properly requests a release from the bankrupt and his wife. There is no evidence that the husband's contingent interest has any value, and, if ordered sold by the court, will be open to the hazard of bringing a nominal price, like other unmarketable or worthless assets. But that furnishes no sufficient reason for denying the trustee's title. It would be the duty of the court to arrange for its disposition in such manner as not to oppress either the bankrupt or his wife. It may be observed that the sum of $939.43, which the company would pay for the policy, does in fact represent a cash surrender value. This value, it is believed, does not arise from the continuance of the present contract, which has been in force for less than a year, but is dependent upon the fact that this policy is an extension, in a changed form, of the old policy issued in 1870. Of course, a policy maintained from 1870 to 1902 would have a substantial cash surrender value. It may be that the

trustee would have the right to reach a valuable asset of the bank-
rupt thus turned over to another. But that question is not before
the court.

In this regard the decision in Holt v. Everall, 34 Law Times Re-
ports (N. S.) 599 (Court of Appeals), may have application. In
cases like In re McKinney (D. C.) 15 Fed. 535, and Leonard, as
Receiver, v. Clinton, 26 Hun, 288, the court very properly declined
to give the bankrupt's estate the benefit of the policies so far as
their value arose from payments made by others than the bankrupt,
and the cash surrender value of the property, growing out of the
payments made by the bankrupt, suitably measured the trustee's
right. Some other rule, equally just, and based on existing facts,
might have been adopted. But if policies have no cash surrender
value, and yet would be redeemed by the insurance company and
a sum paid for them; that sum, so far as it grows out of payments
by the bankrupt previous to the adjudication, should accrue to the
trustee.

Counsel for the bankrupt call attention to In re Buelow (D. C.)
3 Am. Bankr. Rep. 389, 98 Fed. 86, where the court held that poli-
cies were not assets of the bankrupt's estate, and directed that the
trustee should deliver the policies to the petitioners. But the learn-
ed judge stated:

"They have no cash surrender value, and no value for any purpose, except
as they may become valuable at the time of the death of the insured, provided
the premiums shall be kept paid."

Morris v. Dodd, 110 Ga. 606, 36 S. E. 83, 50 L. R. A. 33, 78 Am.
St. Rep. 129, seems to sustain the bankrupt's contention. There
was a contrary decision in Re Slingluff (D. C.) 5 Am. Bankr. Rep.
76, 106 Fed. 154, and in Re Welling, 7 Am. Bankr. Rep. 340, 113
Fed. 189, 51 C. C. A. 151. In Re Holden, 7 Am. Bankr. Rep. 615,
113 Fed. 141, 51 C. C. A. 97, it was held that a policy payable to the
wife of the assured, if she survived the husband, or otherwise to his
representatives, gave each a contingent interest that would accrue
to his or her trustee in bankruptcy. It is stated that the policy had
a cash surrender value, and of this the trustee could avail himself.
In Re Boardman (D. C.) 4 Am. Bankr. Rep. 620, 103 Fed. 783, it
was held that a free tontine policy, payable to the bankrupt, his ex-
ecutors, administrators, or assigns, or to his mother, if living at his
death, before a certain date, had a cash surrender value within the
intent of the statute, although the value was not stated in the policy,
and that, if in the ordinary course of business the bankrupt can ob-
tain cash from the company by surrender of the policy, his creditors
are entitled to cash. In Re Diack (D. C.) 3 Am. Bankr. Rep. 723,
100 Fed. 770, it appears that a policy was issued by the Equitable
Life Assurance Company, and upon its surrender the company
would pay a substantial sum, but required the receipt of both the
assured and his wife. Judge Brown held that, in spite of the fact
that the wife had paid a certain portion of the premiums thereon,
the bankrupt had an interest in the policy which it paid, and di-
rected him to assign to the trustee.

In the case at bar the plain facts are that the policies had no technical cash surrender value at the time of the adjudication, but they did have a surrender value, and the bankrupt has an interest, vested or contingent, therein. Such interest, although contingent, is assignable, and the trustee succeeds to it. It is considered that the exemption laws of the state have no application. The trustee is at liberty to sell the husband's interest in the Equitable policy, and the bankrupt should execute an assignment of his interest to the trustee, for the purpose of enabling the latter to give title on such sale.

Steinhardt & Goldman, for American Metal Co., creditor.

Kenneson, Crain, Emley & Rubino, for bankrupt.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

PER CURIAM. Order affirmed on opinion of Judge Thomas.

---

### J. P. BROWDER & CO. v. HILL.

(Circuit Court of Appeals, Sixth Circuit. April 14, 1905.)

#### No. 1,371.

1. SUBROGATION—VOLUNTARY PAYMENT OF ANOTHER'S DEBT.

The mere fact that one pays off a debt at the instance of the debtor, or lends money with which to pay it, does not entitle him to subrogation to a lien of the creditor; nor is it enough that there is an understanding on his part and that of the debtor that the right of subrogation will result from such payment, in the absence of an express agreement therefor.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Subrogation, §§ 60–68.]

2. SAME—AGREEMENT WITH DEBTOR—EQUITIES OF THIRD PERSONS.

Subrogation by agreement with the debtor alone, to the equities and liens of a creditor whose debt is paid off by one under no obligation, will be enforced in equity only when the agreement creates equitable rights against the debtor, which will not impair or overthrow equitable rights of the creditor or of innocent third persons.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Subrogation, §§ 60–68.]

3. SAME.

A third person who pays a portion of a debt secured by a lien, at the instance of the debtor, will not be subrogated in equity to such lien, to the prejudice of the original creditor with respect to the remainder of his debt.

4. BANKRUPTCY—SUBROGATION TO LABORER'S LIEN OR PREFERENCE.

A bankrupt corporation gave to its employés orders on claimants for goods, and charged the same against the current wages of the men. Claimants filled such orders, and charged the amount to the corporation, which paid the same from time to time, either in cash, or by note or credits on its books. Under the statute (Acts Tenn. 1897, p. 222, c. 78) the employés were entitled to laborers' liens on the property of the corporation for wages earned within three months prior to the bankruptcy. Held, that no right of subrogation to such liens arose in favor of claimants from such transactions, nor to the priority given labor claims by