### In re WOLFF.

(District Court, E. D. New York. December 8, 1908.)

BANKRUPTCY (§ 143*) — PROPERTY PASSING TO TRUSTEE—LIFE INSURANCE POLICY.

> A bankrupt held a life insurance policy payable to his wife if living at the time of his death, and, if not, to his legal representatives, but subject to his right to change the beneficiary at any time, and also, if living at the time of the payment of the last premium to himself receive a cash payment or other settlements specified. The policy had a cash surrender value, and had been pledged by both husband and wife for a loan, and the later premiums had been paid by the wife. *Held*, that under Bankr. Act July 1, 1898, c. 541, § 70a, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451), the bankrupt or his wife was entitled to retain the policy on payment to his trustee of its surrender value at the time the bankrupt ceased paying the premiums, less the amount of the loan for which it was pledged.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 201; Dec. Dig. § 143.*]

In Bankruptcy.

Louis W. Severy, for trustee.

Francis Ray Wadhams, for respondent Wolff.

Alexander & Green (William C. Diamond, of counsel), for Equitable Life Assurance Society.

CHATFIELD, District Judge. The bankrupt, William Wolff, took out a policy in the Equitable Life Assurance Society of the United States, on the 23d day of June, 1899, for $5,000. The policy was made payable to the wife of the bankrupt, "if living, if not, then to the assured's executors, administrators or assigns, subject to the right of the assured to change the beneficiary." The policy further provided that all premiums should be forfeited, and the policy should lapse, upon the nonpayment of any premium when due, except that upon surrender within six months after said lapse, providing premiums have been duly paid for at least three full years of assurance, the society will give the assured the choice of a paid-up policy according to certain values, or the payment of a certain sum in cash according to an annexed table. The provision for the changing of beneficiaries is as follows:

> "This policy is issued with the express understanding that the assured may, provided this policy has not been assigned, change the beneficiary, or beneficiaries, at any time during the continuance of this policy, by filing with the society a written request, duly acknowledged, accompanied by said policy."

It will be seen by this that the consent of the wife was not necessary to a change of beneficiary. Further, an option was given to the assured, if living at the time of the payment of the last premium, to receive a cash dividend, and to draw the entire cash value of the policy according to a certain table, together with this dividend, or to choose any one of several other plans which have nothing to do with this particular case. The premiums upon the policy have been paid up to the present time, and it is shown by affidavit that the bankrupt's wife has paid the various quarterly premiums from and including June 23, 1906, to the present. It thus appears that six of these

quarterly premiums, aggregating $281.40, had been paid by Mrs. Wolff prior to the adjudication in bankruptcy. It also appears from the affidavit that Mr. and Mrs. Wolff pledged the policy by an assignment dated August 6, 1907, to the Equitable Life Assurance Society, for a loan of $300, and it further appears from the affidavits upon this motion that the surrender value of the policy at the time of adjudication was $680. The trustee in bankruptcy demands that the estate in bankruptcy be secured for the amount of this surrender value, less such portion of the loan made by the Equitable Life Assurance Society, with interest, as is chargeable against the estate of the bankrupt. It is conceded by the trustee that Mrs. Wolff has the right to keep the policy in question alive, or that the bankrupt in the future may continue, from after-acquired property, to pay the premiums, and that the surrender value of the policy is the only portion of the policy to which the estate has any claim.

Under the domestic relations law of the state of New York (Laws 1896. p. 220. c. 272, § 22), it is provided that a married woman, or any third person, may cause the life of the husband to be insured, and that such insurance shall be secured to her as her separate property, provided she survives the term of insurance, free from any claims of creditors of her husband, except that, where the premium has been actually paid out of the husband's property, such portion of the insurance money as was purchased by the excess of the premium over $500 is primarily liable for the husband's debts. The United States bankruptcy statute (Act July 1, 1898, c. 541, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3424]), in section 6, provides that property of a bankrupt shall be exempt which is exempted by the statutes of the state in which the bankrupt resided. Holden v. Stratton, 198 U. S. 205, 25 Sup. Ct. 656, 49 L. Ed. 1018. And the courts of New York have interpreted the section of the domestic relations law above quoted to include a policy taken out by the husband but payable to the wife, even if she had no knowledge of the existence of the policy, and if the husband had paid all premiums thereon. But this is only in a case where the policy is payable absolutely to the wife. Brick v. Campbell, 122 N. Y. 337, 25 N. E. 493, 10 L. R. A. 259; Whitehead v. N. Y. Life Insurance Co., 102 N. Y. 143, 6 N. E. 267, 55 Am. Rep. 787. In the present case the policy is payable to the wife, if living at the time of the death of the bankrupt. This in terms makes her estate contingent upon survivorship, and the insured, as has been stated above, was given the privilege of changing the beneficiary, or, if he survived the full period, of diverting the payment from the wife by acceptance of certain of the conditions. The policy was therefore in the nature of what is sometimes called a semitontine policy, payable to the bankrupt at a certain date, or, if he should die before that time, to the wife if living. The latter form was passed upon in the case of In re Diack (D. C.) 100 Fed. 770, and the wife was there held to be entitled only to the proportionate part of the policy represented by the premiums which she had actually paid. The same idea has been expressed in a number of cases (In re Boardman [D. C.] 103 Fed. 783; In re Phelps, 15 Am. Bankr. Rep. 170; In re Coleman, 136 Fed. 818,

69 C. C. A. 496), and has been followed in the courts of the state of New York in Waldron v. Becker, 33 Misc. Rep. 182, 68 N. Y. Supp. 402. In those cases it has been stated that the only policies which are entirely exempt under the state statutes, such as the New York domestic relations law above mentioned, are those in which the wife is the sole beneficiary. The result of this would seem to be that the trustee in bankruptcy was entitled to claim as of the date of adjudication the surrender value of whatever portion of the policy in question had been obtained or had accrued from the premiums paid by the bankrupt himself. A loan having been made by the Equitable Life Assurance Society, and the policy assigned as security, it makes no difference whether this loan was procured for the benefit of Mr. or Mrs. Wolff, inasmuch as they both joined therein. Inasmuch as the surrender value was at all times security for the loan, the surrender value was thereby reduced to the extent of the principal of the loan with interest, and this should be deducted at the outset.

The premiums from the date of the loan to the time of adjudication were all paid by Mrs. Wolff, and she has therefore in equity become entitled to whatever proportion of the surrender value has been acquired through the payment of these premiums. It therefore becomes necessary to determine the surrender value of the policy at the time she began the payment of premiums, viz., June, 1906, and for the difference between that surrender value, viz., $520, and the amount of the loan, the trustee in bankruptcy will be held to have a lien upon the policy, which can either be paid in cash by Mrs. Wolff, or can be carried as an interest in the policy, if it be kept in force, and this lien be not removed, until such time as the policy may mature or a lapse render the surrender value available for the discharge of the liens. The bankrupt and the beneficiary will be required to make the necessary assignments to carry out this decision.

It is apparent that in most instances of bankruptcy the premiums upon any life insurance carried by the bankrupt will prove to have been paid more than four months prior to the bankruptcy, and usually at a time when no question of insolvency, or intent to defraud creditors, can be predicated upon the bankrupt's financial or mental state. Further, a life insurance policy, or the premiums thereon, can be made the subject of a valid gift by a solvent individual, and subsequent bankruptcy would not affect the validity of the gift. Under such circumstances the creditors of such a bankrupt would seem to be entitled only to the premiums paid within four months and while insolvent, or paid with actual intent to defraud. The doctrine of the New York cases of Brick v. Campbell, supra, and Whitehead v. New York Life Insurance Co., supra, shows the trend of public policy in favor of protecting insurance for the benefit of widows and persons dependent upon the bankrupt, when no intent to defraud creditors existed. Since the decision of those cases, and following the general progress of statutes looking toward facility in the transaction of business, and toward the possibility of making loans upon policies which have acquired a present or so-called surrender or loaning value, the form of insurance policies has more and more approached that of a

contract with the person whose life was insured to pay him, upon the happening of certain events, an increasing sum of money, but with a tontine or survivorship feature for the benefit of the wife or other person in the sole event that his death should occur prior to a certain time.

It may be noted that such provisions seem to be inserted in insurance policies for the sake of making them attractive to the person insured, and to give a large return for the premiums paid. This is the result of competition and also better methods of administration in the insurance companies. But the result, nevertheless, is that the estate of the person insured is increased thereby, the insured makes the choice of the form of policy and the contract, which is more for the benefit of himself than of the wife or other beneficiary under the later forms of policy, and at the present time such policies as those under consideration are not exempt from the claims of the creditors, even though the insured has supposed, and may have actually desired, his wife or his beneficiary to be protected to the extent of this insurance. The case of Holden v. Stratton, supra, in which the Supreme Court of the United States upholds the law of the state of Washington making a policy of this sort exempt, illustrates what can be done if the desires of any state are manifested by legislation exempting such policies. In New York at the present time (and the conditions of exemption in New York are those which in the present case must be considered under section 6 of the bankruptcy law), the surrender value of the policy would seem to be the property of the bankrupt estate, rather than that of the bankrupt's possible beneficiary under the policy, and such a situation exists as would seem to have been contemplated in section 70 of the bankruptcy law, in the proviso to subdivision 5, that "when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may * * * pay or secure to the trustee the sum so ascertained and stated," etc. Under the doctrine of Brick v. Campbell, supra, this right to elect might be transferred to the beneficiary, and she might also be limited to the same period within which to exercise the privilege given to the bankrupt by the section quoted.

This does not change, however, the present situation, and the trustee in bankruptcy has title under section 70, subd. 5, of the bankruptcy law to so much of the surrender value as has been indicated above, viz., $520, less the loan, with interest to the date of adjudication.