\* BURDETT *et al.* v. BURDETT *et al.*

No. 1085.     Opinion Filed May 10, 1910.

(109 Pac. 922.)

1.  **APPEAL AND ERROR—Necessity for Motion for New Trial.**
    A motion for a new trial is unnecessary to enable this court to review the action of the trial court in sustaining a motion for judgment on the pleadings.

2.  **COURTS—Jurisdiction—Ind. Ter. Courts—Probate.** The United States courts for Indian Territory, sitting in probate, were by act of Congress of May 2. 1890, c, 182, 26 Stat. 81, which extended to and put in force in Indian Territory Mansf. Dig. c. 53 on "dower," vested .with jurisdiction to allot dower in personalty belonging to as estate in course of administration therein

3.  **COURTS—Jurisdiction—Statehood—Transfer of Probate Matters.**
    A proceeding pending on petition for the allotment of dower in personalty belonging to an estate in course of administration in one of the United States courts in Indian Territory, sitting in probate, at the time of admission of the state into the Union, was, by section 19 of the enabling act (Act Cong. June 16, 1906, c. 3335, 34 Stat. 277), and section 23 of the schedule of the Constitution, transferred to the county court of the county in which was located the court in which said case was pending.

4.  **DESCENT AND DISTRIBUTION—Property of Husband—Proceeds of Insurance—Dower.** Policies of insurance issued to insured on his own life, payable to himself, or, at his death, to his "executors, administrators, or assigns," where his separate property, the proceeds of which, if not otherwise disposed of by him, go to his executors as part of his estate, subject to the widow's dower, as provided in Mansf. Dig. c. 53 (Ind. T. Ann. St. 1899, c. 23), extended over and in force in Indian Territory at the time of his death.

---

*Appealed to the Supreme Court of the United States.

5.  DESCENT AND DISTRIBUTION—Rights of Surviving · Wife—
Seized." Prior to the admission of the state into the Union,
testator died in what was then Indian Territory, now a part of
this state, the owner of certain insurance policies, on his life
payable to himself, or, after his death, to his "executors, admin-
istrators, or assigns," the proceeds of which were collected by
his executors. At the time of his death Mansf. Dig. c. 53, on
"dower," had been extended to and was in force in Indian Ter-
ritory by act of Congress of May 2, 1890, and provided: "Sec.
2591 (Ind. T. Ann. St. 1899. sec. 1879). "A widow shall be entitled,
as part of her dower, absolutely in her own right, to one-third
part of the personal estate, including cash on hand, bonds, bills,
notes, book accounts, and evidences of debt, whereof the hus-
band died seized or possessed." After renouncing the will, tes-
tator's widow petitioned the United States court for Indian Ter-
ritory, Western district, wherein his estate was in course of ad-
ministration, to decree her dower in the proceeds of said policies,
which proceeding was, on admission of the state, properly trans-
ferred to the county court of the county in which was located
the court where said case was pending, where the petition was
granted. Held, that said proceeds were a part of testator's es-
tate; that he died "seized" thereof within the meaning of said
section and that the court had jurisdiction to and did not err in
allotting dower in said proceeds; held further, that as there
were no children of the marriage, petitioner is entitled to be en-
dowed of one-half of the proceeds thereof collected, or which
may be collected by the executors, absolutely and in her own
right, as provided by Mansf. Dig. § 2592 (Ind. T. Ann. St. 1899,
§ 1880).

6.  DESCENT AND DISTRIBUTION—Dower—Property Subject—
"Seized." The term "seized" as used in Mansf. Dig. § 2591 (Ind.
T. Ann. St. 1899 § 1879), when applied to dower in personalty,
means "title" or "ownership," which carries with it the imme-
diate right of possession.

(Syllabus by the Court.

*Error from District Court, McIntosh County; Presley B. Cole,
Judge.*

Action by Sudie M. Burdett and others against Bell Burdett
and others. Judgment for plaintiffs, and defendants bring error.
Affirmed.

*Wilkins & Vinson* and *Amos L. Beaty*, for plaintiffs in error
Bell Burdett and Mattie Ledbetter.—Citing: *Martin v. McAles-
ter*, 94 Tex. 567; *Hearings Succession*, 26 La. Ann. 326; *Pace v.*
· Vol. 26—27

*Pace,* 19 Fla. 438; *Morris v. Dodd* (Ga.) 36 S. E. 83; *Hubbard v. Turner,* 93 Ga. 752; *Kenyon v. Kenyon* (R. I.) 24 Atl. 787; *Von Arb v. Thomas* (Mo.) 63 S. W. 94; *Redding v. Vogt* (N. C.) 53 S. E. 337; *Gray v. Whittermore* (Mass.) 78 N. E. 422; *Masonic Order v. Bunch* (Mo.) 19 S. W. 25.

*Wm. A. Collier,* for defendant in error Sudie M. Burdett.—Citing: *Huston v. Merrifield,* 51 Ind. 24; *U. S. Life Ins. Co. v. Ludwig,* 103 Ill. 305; Amer. & Eng. Ency. (1st Ed.) vol. 3, p. 235, sec. 1; *Id.* vol. 13, p. 631, 650; *Hasley v. Heist,* 86 Ind. 45; *St. John v. Amer. Mut. Life Ins. Co.* (N. Y.) 64 Am. Dec. 529; *Ionia Co. Savings Bank v. McLean,* 84 Mich. 625; *Foster v. Gile,* 50 Wis. 610; *Steel v. Gatlin,* 115 Ga. 924; *Stull v. Graham,* 60 Ark. 470; *Gould v. Emmerson,* 99 Mass. 154; *McClure v. Johnson,* 56 Iowa, 620; *Hatcher v. Buford,* 60 Ark. 174; *Johnson v. Hall,* 55 Ark. 210; *Libby v. Libby,* 37 Me. 359; *Schield v. Sharp,* 35 Mo. App. 178; *Conn. Mut. Life Ins. Co. v. Fish,* 19 N. H. 126; 25 Cyc. pp. 890, 896; *Pinneo v. Goodspeed,* 120 Ill. 524; *Douglass v. Parker,* 84 Me. 522; Bliss on Life Insurance (2d Ed.) sec. 328; *Rawson v. Jones,* 52 Ga. 458; *Burroughs v. Life Ins. Co.,* 97 Mass. 359; *McIntyre v. Costello,* 47 Hun. (N. Y.) 289; 14 Cyc. 901, sec. b; *Hewett v. Cox,* 55 Ark. 234; *Crowley v. Mellon,* 52 Ark. 1.

TURNER, J. On January 10, 1907, Sudie M. Burdett, defendant in error, in the United States court for the Indian Territory, Western district, at Eufaula, filed her petition in which she alleged herself to be the widow of Joshua Burdett who died in Eufaula on or about April 3, 1906; that pursuant to his last will and testament, duly probated in said court, letters testamentary had issued to Phil. W. Samuels and Elmer C. Million, as executors thereof; that under the terms of said will she, Bell F. Burdett, Mattie B. Ledbetter, James C. Crabtree, C. L. Samuels, Phil. W. Samuels, and Elmer C. Million are the sole legatees; that she had filed in said court her election renouncing the provisions made for her under said will and electing to take dower

in said estate; that at the time of his death said Joshua Burdett owned a large amount of property (setting it out), including certain policies on his life, as follows: Policies in Equitable Life Assurance Society, $70,000; policies in the Mutual Life Insurance Company of New York, $20,000; policies in the Indiana State Life Insurance Company of Indiana, $10,000; policies in the Provident Saving Life Assurance Company of New York, $35,000; policies in the Penn Mutual Life Insurance Company of Philadelphia, $100,000. In all of which she alleged herself entitled to be endowed by virtue of the statute then in force in Indian Territory; that under said statute, as there were no children born of her marriage with said Joshua Burdett, she alleged herself entitled to be endowed of one-half of all the personal property of his estate, including cash on hand, bonds, bills, notes, book accounts, and evidences of debt whereof the said Joshua Burdett died seised or possessed, and also one-half of all the real estate of which her said husband died seised; that she had demanded of said executors that her dower be set apart to her, which had not been done, and prayed that they be directed so to do, and for all proper orders in the premises.

On January 25, 1907, Bell F. Burdett and Mattie Ledbetter, joined by her husband, J. W. Ledbetter, answered in substance that prior to his death deceased had purchased a block of ground in the town of Eufaula and erected thereon certain buildings and improvements, and caused title thereto to be vested in petitioner; that he had expended large sums of money on her allotment; that he had purchased a number of policies of insurance on his life payable to her at his death and had paid premiums thereon until that time, all of which was intended to be in lieu of dower. (This conclusion was eliminated by stipulation and is unsupported.) That the several policies set forth in the petition are, by their terms, payable to the executors, administrators, or assigns of the deceased, after proof of his death occurring while they were in force; that none of them possessed a surrender value to deceased, except those in Equitable Life Assurance Society and the Mu-

tual Life Insurance Company of New York, and that they were pledged by him for debts exceeding such value; that he died seised of no claim or right of action against any of said insurance companies under the policies out of which dower is sought. (This allegation as to seizure was also eliminated.) That a large portion of the property set forth in the petition was pledged or mortgaged by deceased, and so remained at the time of his death (setting forth the items so pledged and to whom and for what amounts, including the two policies aforesaid), and that there may be and probably are other pledges and liens having priority over the dower sought to be assigned in said property; that of said $235,-000 life insurance so payable, said two policies of $20,000 each, pledged by deceased, had been collected and the proceeds thereof applied by the pledgee in satisfaction of the debt due it; that the amount collected by the executors on the remaining policies for $50,000 in the Equitable Life Assurance Society, after payment to it of the debt for which they were pledged, was $55,-154.02; that the State Life Insurance Company of Indiana claimed and secured an offset on the policy issued by it and paid in full thereon $9,762, making in all only $55,154.02 of said life insurance actually paid into the hands of the executors, who had instituted suit on said remaining policies, which said suits were still pending; and filed as an exhibit a copy of said will and prayed that dower be not assigned; that if assigned out of any of said property it be limited to the equity of redemption or surplus remaining, where the property is pledged or mortgaged.

On February 1, 1907, petitioner and respondents agreed in substance to submit the cause to the court on the pleadings, as modified by stipulation. Thus the cause stood on the advent of statehood, when it was transferred to the county court of McIntosh county, Okla., in which, later, Phil. W. Samuels, C. L. Samuels, Elmer C. Million and James C. Crabtree entered their appearance in the cause. On April 6, 1908, the same coming on to be heard, all parties in interest being present, the court found, in effect, that the allegations set forth in the petition and answer

were true, except that part reserved by stipulation; that petitioner was entitled to dower under the statute in all the property set forth, subject to any and all valid liens placed thereon by Joshua Burdett in his lifetime, and ordered, adjudged, and decreed that said executors be and they were thereby directed to set off and assign to petitioner, as dower, one-half of all the personal estate of said Joshua Burdett, deceased, which had theretofore, or which might thereafter, come into their hands as executors, which said order was duly excepted to and an appeal prayed and granted to the district court.

On September 19, 1908, the cause came on for hearing in the district court, whereupon all parties appeared and announced ready for trial, waived a jury, and submitted the cause upon the transcript of the record as certified from the county court, whereupon the court, after considering the same in effect rendered judgment on the pleadings, and ordered, adjudged, and decreed petitioner entitled to dower "in all the property of said deceased, including the proceeds of policies of life insurance which were payable to the executors, administrators, or assigns of said deceased, whether heretofore collected or hereafter to be collected." That the order of the county court be and the same was "in all things affirmed and made the judgment of this court the same as though here set forth in full"; to all of which Bell Burdett and Mattie Ledbetter, in open court, then and there excepted, and, after motion for new trial filed and overruled, bring the case here for review by petition in error and case-made in case No. 448, and later by petition in error and transcript in case No. 1.085, which causes have by consent been consolidated.

In case No. 448 counsel for defendant in error, Sudie M. Burdett, moves to dismiss the petition in error on the ground that C. L. Samuels, Phil. W. Samuels, Elmer C. Million, and James C. Crabtree, parties in the trial court, legatees under the will, and alleged to be necessary parties to this proceeding, are not joined herein. He also moves to dismiss case No. 1,085 on the ground that the motion for a new trial is not preserved in the

record by bill of exceptions. It is conceded by both sides "that each appeal must be tested separately and that if both possess vital defects they must both fall, notwithstanding the consolidation." The result of this concession is that if the appeal in either case is good, the other need not be considered We are of the opinion that plaintiff in error is properly here by petition in error and transcript of the record in case No. 1,085. In that case, both the county court and the district court entered judgment on the pleadings, which consisted of the petition and answer modified by the stipulation, which was carried into the decree of both courts. These pleadings were a part of the record and, together with said decree, are properly before us by transcript. As a motion for a new trial was unnecessary to enable this court to review the action of the trial court in sustaining the motion for judgment on the pleadings (*Doorley v. Buford, etc., Mfg. Co.,* 5 Okla. 594, 49 Pac. 936), it was in this case a useless motion, and the motion of defendant in error to dismiss this proceeding on account of the absence of it, properly preserved by bill of exceptions, should be overruled. The question then before us to determine is whether the court erred in rendering judgment on the pleadings in favor of petitioner. If such was error the same appears from the face of the record brought up by petition in error and transcript in case No. 1,085, which we will now proceed to determine to the exclusion of any question sought to be presented by the case-made in No. 448.

But before we reach that question it is contended by counsel for plaintiff in error that the county court had no jurisdiction in the premises, because he says that the county court of McIntosh county was not the successor of matters probate pending in the United States court for the Indian Territory, Western district, on admission of the state into the Union, and if it was, that allotting dower in personalty was not an exercise of probate jurisdiction. That the county court of McIntosh county was the successor in matters probate pending in the United States court for the Indian Territory, Western district, on the advent of statehood, we

consider no longer an open question in this jurisdiction, having been squarely passed on by this court in *Eaves v. Mullen,* 25 Okla. 679, 107 Pac. 433, where the court said:

"By section 12 of article 7 of the Constitution, original jurisdiction in all probate matters is conferred upon the county courts. As in probate matters, the county courts of the state correspond in original jurisdiction thereof to the United States courts of the Indian Territory, and to the probate courts of Oklahoma Territory, they became, as to all probate matters, as a class of courts established in the state. the successors of said territorial courts, and specific provision was made by section 23 of the schedule for the reception by the county courts of the probate cases pending at the time of the admission of the state, and for their final disposition. It was the duty of the district court of any county of the state, carved out of the Indian Territory, to cause by proper order all matters, proceedings, records, and books to all original causes or proceedings, relating to estates. that came to it from any United States court of the Indian Territory to be transferred to the county court of such county. *Davis v. Caruthers,* 22 Okla. 323; 97 Pac. 581."

And in the syllabus said:

"A guardianship proceeding pending in one of the United States courts of the Indian Territory at the time of admission of the state was, by section 19 of the enabling act (Act June 16, 1906, c. 3335, 34 Stat. 277), and section 23 of the schedule of the Constitution, transferred to the county court of the county in which was located the court in which the case was pending."

The jurisdiction of the United States court for the Indian Territory, Western district, sitting in probate to allot dower in personalty out of estates in course of administration therein, and hence to entertain this proceeding, appears from the face of the statutes in force in the Indian Territory at the time of the death of Burdett. Section 2606 of chapter 53 of Mansf. Dig. (Ind. T. Ann. St. 1899, § 1894) extended to and put in force in Indian Territory by act of Congress May 2, 1890, c. 182, 26 Stat. 81, and in force at the time of the death of Burdett, in effect provides, under the head of "Dower," that the widow may file in the probate court a written petition describing the land in which she claims

dower, the names of those having an interest therein and the amount of such interest, with a prayer for allotment of dower; and that thereupon all persons interested in the property shall be summoned to answer the petition. Section 2611, in effect, provides that if a person summoned desires to test the right of petitioner or the statements in the petition he shall file a written answer, and the questions of law and fact thereupon arising shall be tried and determined by the court upon the petition, answer, exhibits, and other testimony. The next section, in effect, provides that when the court decrees dower it shall appoint three commissioners who shall proceed to the premises and lay it off by metes and bounds, in accordance with the decree of the court. Section 2590 (section 1878), in effect, provides that said commissioners shall, on request of the widow, lay off her dower so as to include the usual dwelling house; provided, etc. Section 2591 (section 1879) reads:

"A widow shall be entitled, as part of her dower, absolutely in her own right, to one-third part of the personal estate, including cash on hand, bonds, bills, notes, book accounts, and evidences of debt whereof the husband died seized or possessed."

Showing clearly that her dower in personalty was "part of her dower" in the land, and that the court having jurisdiction to lay off dower in land had also jurisdiction "as part of her dower" therein, to allot her dower in personalty, and that too in the same proceeding. This, with the qualification, however, that the jurisdiction of the probate court can be properly invoked only to allot dower unmixed with any question of title, damage, or accounting. When such are involved in an application for dower the jurisdiction of the chancery court should be invoked. This has been the rule in Arkansas from an early date and was squarely passed upon in *Hilliard, Ex parte,* and *Hilliard v. Hilliard,* 50 Ark. 34, 6 S. W. 326.

In that case the widow filed her petition in the probate court of Chicot county for an assignment of dower. While it was pending defendants thereto applied to the same court to grant her request, and, pursuant to their prayer, judgment for such assign-

ment was entered. Petitioner, as appellant, then applied to the circuit court to quash the judgment of the probate court on certiorari for want of jurisdiction, but her application was refused. She also filed her bill in chancery against the administrator and heirs, praying that the execution of the judgment of the probate court be restrained, and that her dower be assigned by the chancery court. The chancellor dismissed the bill. On appeal from both decisions, heard as one case, the jurisdiction of the probate court was assailed and the same contention there raised as here, that said court was without jurisdiction to allot dower. The Supreme Court, in passing, held in effect that under the Constitution both the jurisdiction of the probate and chancery courts were preserved in the allotment of dower; that:

"The latter is the more potent, most general and usually resorted to, but when the estate is in course of administration, as it is in the case before us, and it is desired only to allot dower without adjusting any question of title or damage, the probate court has the power and machinery to act on the petition of the widow. *Menifee v. Menifee* [8 Ark. 9] *supra*; Mansf. Dig. § 2606."

And in the syllabus said:

"Section 2606, Mansf. Dig., is not inconsistent with any provision of the Constitution of 1874 and confers on the probate court a limited jurisdiction in the allotment of dower, concurrent with the circuit court in chancery. The jurisdiction of chancery over the subject is more extensive than that possessed by the inferior court; but when an estate is in course of administration and it is desired only to allot dower, without adjusting any question of title or damage, the probate court has the power to act on the petition of the widow."

But it might be contended that the Hilliard Case was a petition by the widow in the probate court for the allotment of dower in realty. Let this be as it may, the probate court "as a part of her dower" has also jurisdiction, when invoked in the same petition, as in this case, to allot her dower in personalty, pursuant to section 2159, *supra*.

In *Hewitt v. Cox*, 55 Ark. 225, 15 S. W. 1026, 17 S. W. 873, Laura S. Hewitt, widow of Nelson G. Hewitt, filed a petition in

the probate court of Pulaski county, stating, among other things, that her said husband died on February 6, 1897, a citizen of that state and a resident of that county; that he left a last will and testament, and made certain parties therein named his devisees and legatees; that the probate court of that county had appointed an administrator (naming him); that she had relinquished her rights under the will, and claimed dower in certain real estate and personal property (describing it), of which deceased was owner at the time of his death, and asked that dower therein be assigned to her. Pursuant to this petition the probate court assigned her dower therein. The administrator and one of the legatees appealed to the circuit court in chancery. There the court entered its decree in the case, from which an appeal was prosecuted to the Supreme Court, where the judgment of the lower court was modified but in other respects affirmed; thereby, in effect, in so far that the same was not questioned, recognizing jurisdiction in the probate court to enter the judgment appealed from. See, also, *Stull v. Graham,* 60 Ark. 461, 31 S. W. 46; *Hatcher v. Buford,* 60 Ark. 169, 29 S. W. 641, 27 L. R. A. 507: *Jones v. Jones,* 28 Ark. 20; and *Menifee v. Menifee,* 8 Ark. 10.

Did the court err in rendering judgment on the pleadings and decreeing petitioner entitled to be endowed in the proceeds of said policies? Plaintiff in error contends that it did, because, he says, that as the pleadings disclose said policies to be payable to the "executors, administrators, or assigns" of deceased, he did not thereof "die seised or possessed" within the meaning of section 2591 of Mansfield's Digest, *supra.* Not so. Deceased having an insurable interest therein insured his life, naming himself, his "executors, administrators, or assigns" the beneficiary in these policies. Being payable to his assigns he, of course, had the sole beneficial or assignable interest therein, and they being choses in action, he could, at any time before his death, have parted with such interest the same as with his interest in any other choses in action. *Mutual Life Insurance Co. v. Armstrong,* 117 U. S. 591, 6 Sup. Ct. 877, 29 L. Ed. 997. As he did not do so, but died with such interest in him,

let us determine what that interest was and of what, if anything therein, he died seised. As beneficiary, therein, from the time of the execution and delivery of said policies he was not only the sole owner thereof, but of all they represented. Not only did the policies themselves belong to him, but the money to become due thereunder. In other words, the title to these policies and the money to become due under them was from the date of their delivery to Burdett, as beneficiary, vested in him and so remained up to the time of his death.

In *Washington Central Bank v. Hume*, 128 U. S. 195, 9 Sup. Ct. 41, 32 L. Ed. 370, the court said:

"It is indeed the general rule that a policy, and the money to become due under it, belong, the moment it is issued, to the person or persons named in it as the beneficiary. Bliss on Life Insurance (2d Ed.) p. 517; *Glanz v. Gloeckler*, 10 Ill. App. 484, per McAlister, J.; s. c., 104 Ill. 573 [44 Am. Rep. 94]; *Wilburn v. Wilburn*, 83 Ind. 55; *Ricker v. Charter Oak Ins. Co.*, 27 Minn. 193 [6 N. W. 771, 38 Am. Rep. 289]; *Charter Oak Life Ins. Co. v. Brant*, 47 Mo. 419 [4 Am. Rep. 328]; *Gould v. Emerson*, 99 Mass. 154 [96 Am. Dec. 720]; *Knickerbocker Life Ins. Co. v. Weitz*, 99 Mass. 157."

In *Bushnell, Adm'r, v. Bushnell*, 92 Ind. 503, speaking of the interest of the beneficiary in a life policy, the court said:

"* * * Such a policy is a chose in action, and * * * the title thereto may be transferred by the beneficiary indorsing his name thereon and delivering the possession thereof to the assignee. *Hutson v. Merrifield*, 51 Ind. 24, 19 Am. Rep. 722; *Harley v. Heist*, 86 Ind. 196, 45 Am. Rep. 285."

In *Re Dobbel et al.*, 104 Cal. 432, 38 Pac. 87, 43 Am. St. Rep. 123, the court held that a policy taken out by the husband and made payable to his wife, her executors, administrators, or assigns when issued was her separate property and valuable property, which could be sold, assigned, or bequeathed by her; that its pecuniary value to the owner was as great as though she held a promissory note of the company for that amount payable upon the same

conditions, and was in fact a chose in action of which she had the title.

In *Glanz v. Gloeckler*, 104 Ill. 573, 44 Am. Rep. 94, the court held that where a father insured his life for the benefit of his daughter, made payable to her, her executors, etc., that on her death the legal title thereto passed and vested in her legal representative.

Now if the title to these policies and the proceeds thereof, from the time of their inception, was vested in Burdett and so remained up to the time of his death, did he die seised thereof? We think he did, and, as used in this connection, to die the "owner" of or with "title" to personalty, is to die "seised" thereof, and these terms may be regarded in effect to mean one and the same thing. In *Hatcher v. Buford*, 60 Ark. 169, 29 S. W. 641, 27 L. R. A. 507, the court construing "seised," as used in this connection in effect held it to mean, with reference to personalty, "ownership," which carries with it the right of possession. See, also, *Hobson et al. v. Ewan*, 62 Ill. 146, where "seisin" and "ownership" are held to be synonymous. See, also, *Matter of Dodge*, 105 N. Y. 591, 12 N. E. 759; *Deshong v. Deshong*, 186 Pa. 227, 40 Atl. 402, 65 Am. St. Rep. 855; *Cook v. Hammond*, 4 Mason, 489, Fed. Cas. No. 3, 159. In *Atwater v. Spalding et al.*, 86 Minn. 101, 90 N. W. 370, 91 Am. St. Rep. 331, the court quoted approvingly from Black's Dictionary and said that the "owner" is the person "in whom is vested the ownership, dominion, or title, of property." And from Webster's Dictionary, defining "owner" as "one who owns; a rightful proprietor; one who has the legal or rightful title, whether he is the possessor or not." In the light of which we think it may be safely said that under the statute, *supra*, a widow is entitled to be endowed of any personal property belonging to her husband at the time of his death or of which at that time he was the "owner," or to which he was entitled, or to speak nicely, in which he died vested of the title.

This accords with *In re McKenzie*, 142 Fed. 383, 73 C. C. A. 483,

That was error to the district court·of the Eastern district of Arkansas to reverse the judgment of that court to· the effect that the· widow of a bankrupt, who died after his adjudication as such, is not entitled to any rights of dower in the proceeds of his personal property, which passed to his trustee in bankruptcy. The facts were that on February 16, 1904, the husband of petitioner had been adjudged a bankrupt on his own petition and his property was thereupon placed in the possession and control of a trustee in bankruptcy. On June 19, 1904, after the trustee had converted said property into money, the bankrupt died. The petition of his widow for one-third of the proceeds thereof as dower was denied. The Circuit Court of Appeals for the Eighth judicial circuit held the judgment right, for the reason that prior to his death both the title and the right of possession to the property had passed out of the owner and had vested in the trustee, for the benefit of creditors and in effect said in construing the statute, *supra,* that the appointment and qualification of the trustee disseised and dispossessed the bankrupt of all said property not exempt long before his death, and, such being the case, the husband of petitioner being neither seised nor possessed of any of it when he died, the widow's claim could not be sustained. This was declared by the court to be in accord with the decisions of the Supreme Court of Arkansas, uniformly holding that where a debtor died while owner and in possession of personal property such claim of the widow had been sustained and declared superior to that of creditors, but that where the husband died after parting with the title or possession of his personal property such claim of the widow under said statute was held inferior to that of creditors, on the ground that ownership and possession at the time of the death of the husband were indispensable conditions to the maintenance of such claim—citing *Arnett v. Arnett,* 14 Ark. 57, and other cases. After declaring the crucial test of the right of dower in personalty to be seizure or possession of the husband at the time of his death, in conclusion, however, the court said: .

"If the death of the bankrupt, McKenzie, had occurred at or before the transfer of his title to the trustee in bankruptcy, the contention might have persuasive force, because then he might have been seised or possessed at the time of his death."

In view of which utterance we think we· can see the probable holding of the court, had the property in controversy in that case been the proceeds of a life insurance policy, the title to which had not yet passed out of the insured and vested in the trustee. The undoubted effect of the reasoning there used would doubtless have constrained the court to decree dower therein under said statute. It will not do to say that this case is not in point for the reason, as is contended, that the policies in question ·having no cash surrender value would not pass to the trustee in bankruptcy. We think it sufficient to say, as held in *Re Coleman,* 136 Fed. 818, 69 C. C. A. 496, that where policies, as will be here presumed, have a collateral loan value, or a paid-up insurance value, the same will pass to the trustee in bankruptcy and constitute valuable assets belonging to the estate.

The proceeds of these policies not only belonged to Burdett from the moment they were issued up to the time of his death, as held in *Washington Central Bank v. Hume, supra,* but the money was due and owing him at that time. In *Petty v. Wilson,* 4 L. R. (32-33 Victoria) 574, testator devised to his wife "any money, * * * which may be due and owing to me at the time of my decease." Testator at his death was entitled to a policy of assurance on his own life by which £500 was assured to be paid to his legal personal representatives out of the funds of the Assurance Society six months after his death. The vice chancellor held that the money received on the policy did not pass to the widow under said bequest. On appeal Sir C. J. Selwyn, L. J., held that it did, and in passing said:

"But was it money due and owing to the testator at his decease? I am of opinion that it was, and that it would be too great a refinement to ·divide the moment of the testator's death, so as to say that a debt which accrued at his death ·was not owing at his

death. It would be making a fanciful distinction to say that this money, which clearly forms part of the testator's estate, was not owing to the testator, because it could not, in any event, be paid to himself, but must be received by his representatives. The case in this respect differs but little from that of money owing to the testator on a promissory note and payable on a day which did not arrive till after his decease. I am of the opinion therefore that this sum passed to the widow."

And so we say in this case. The refinement is too great to say that the proceeds of these policies, because payable to the executors, administrators, or assigns, or the estate of deceased, was personalty of which he was not the "owner," and of which he did not die "seised or possessed," within the sense that "seised," as used in this connection, and "ownership" and "title" are synonymous terms.

And so it has been held in *Walker v. Peters et al.,* recently decided by the Kansas City (Mo.) Court of Appeals, and reported in 139 Mo. App. 681, 124 S. W. 35. In that case A. F. Hendrix died sole in Howard county, Mo. Plaintiff was appointed executor in his will and as such received payment of two benefit certificates of insurance for $2,000 each. Surviving him he left defendants Marion N. Peters, his affianced, and Mary H. Hall and Magdaline L. Hendrix, his only sisters and heirs. Defendant Marion claimed the fund under the will, and Mary and Magdaline claimed it as the only heirs of deceased. Plaintiff, as executor, brought suit to have the court decree to whom it should be paid; Mary and Magdaline answered jointly, and Marion filed her separate answer. The circuit court rendered judgment in favor of the former and against the latter. The two certificates were made payable to deceased's mother, whom he survived, in which event they were made payable to the "legal representatives" of the member. The will provided, after making certain bequests to his sisters aforesaid, "I give, devise, and bequeath all the rest and residue of the property of which I may die seized, real, personal and mixed, absolutely to Marion N. Peters, of————." Under this clause Marion claimed the

funds arising from the beneficiary certificates in the hands of plaintiff as executor. The court of appeals in passing in effect held that the term "legal representatives" meant "executors" or "administrators"; that the funds went to plaintiff, as executor, as part of the estate of deceased, and passed to Marion under the third clause of the will, bequeathing her the residue of the estate of which deceased died seised, and reversed the judgment of the circuit court, with directions to enter a judgment giving the said Marion the proceeds of said certificates in the hands of the executors.

We are therefore of opinion that as Burdett died with the title of these policies in him, and the money due thereunder belonging to him, that he was owner thereof and seised of both. It follows, as there were no children of the marriage, that petitioner is entitled to be endowed of one-half of the proceeds thereof collected, or which may hereafter be collected by the executors, absolutely and in her own right (Mansf. Dig. § 2592), and that the judgment of the trial court should be affirmed.

It is so ordered.

All the Justices concur.