# A. W. WALKER, Respondent, v. MARIAN N. PETERS, Appellant.

### Kansas City Court of Appeals, December 6, 1909.

1. **BENEFIT CERTIFICATES: Legal Representatives: Will.**
A benefit certificate of life insurance appointed the member's mother as beneficiary and if she died before he did then the amount to be paid to his legal representatives. The mother died before he did. *Held*, that upon his death the money belonged to the estate, subject to be bequeathed by his will.

2. **WILLS: Fiancee of Member: Heirs.** That if bequeathed by the deceased member to his fiancee, his heirs had no interest in the fund.

3. **WLLS: Fiancee of Member: Heirs: Articles of Association Distinguishing Between Terms "Legal Representatives" and "Heirs."** A member of a beneficiary association died, leaving two sisters as his only heirs. He was unmarried but was affianced to a lady in Pennsylvania at time of his death. He had taken out two benefit certificates which became, according to their terms, payable to his "legal representatives." The certificates and articles of association distinguished between the words legal representatives and heirs, etc. By his will he bequeathed certain personal effects to his sisters and then provided that "all the residue of the property of which I may die seized, real, personal and mixed," should go to his fiancee. *Held*, that the latter should receive the fund arising from the certificates.

4. **STATUTE: Debts of Beneficiary.** The statute (R. S. 1899, sec. 7908) providing that funds arising from payment of benefit certificates shall not be taken for debts of the beneficiary, does not prevent the estate or legal representatives from being a beneficiary.

5. **STATUTE: Creditors: Beneficiaries.** Nor, when the articles of association provide that creditors may be beneficiaries, does the statute prevent them from being so.

6. **WILLS: Seized.** The word "seized" if used in its technical sense would generally only apply to real property and hence would not affect the meaning of a will as to personalty, such as the fund in this case.

7. **WILLS: Benefit Certificates.** Where a benefit certificate is payable to the member's estate unincumbered by any trust, he may dispose of it by will.

Walker v. Peters.

Appeal from Howard Circuit Court.—*Hon. A. H. Waller*, Judge.

REVERSED AND REMANDED (*with directions*).

*Edward E. Beidleman, E. W. Henry* and *W. F. Spottswood* for appellant.

(1) The certificates pointed out where the fund should go in the contingencies which happened, namely, to the legal representatives of the insured. The words "legal representatives" were employed in the certificates in the sense of executors and administrators. Loos v. Insurance Co., 41 Mo. 538; 3 Am. and Eng. Ency. Law (2 Ed.), 975; 18 Am. and Eng. Ency. Law (2 Ed.), 813; Insurance Co. v. Bank, 121 Mo. App. 487; Johnson v. Van Epps, 110 Ill. 551; Common People v. Phelps, 78 Ill. 147; Wason v. Coldburn, 99 Mass. 342; Sulz v. Mutual Reserve Fund L. Assn., 145 N. Y. 563; Kelly v. Mann, 56 Iowa 625. (2) As was said in Bank v. Abernathy (32 Mo. App. 211), the words "legal representatives" are wellnigh universally held to mean executors and administrators, when applied in connection with the death of anyone. This rule of interpretation is applied to policies of life insurance. 3 Am. and Eng. Ency. Law (2 Ed.), 975, supra; Insurance Co. v. Bank, 121 Mo. App. 479, supra, and other authorities cited, supra. Armstrong v. Insurance Co., 11 Fed. 573.

*W. N. Williams* and *Scarritt, Scarritt & Jones* for respondent.

(1) The certificates are to be construed according to the laws of this State. Pietri v. Sequenot, 96 Mo. App. 265. The statute provides that the proceeds "shall not be used, taken, appropriated or applied, by any legal or equitable process, nor by operation of law, to pay any debt or liability of a policy or certificate holder." R. S. 1899, sec. 7908; McCoy v. Bankers Life Ass'n, 134 Mo. App. 35. (2) No attempt was made by the

certificate holder, either by his will or in any other manner, to change the beneficiary in the original certificate. (3) The statutes of this State, as well as the by-laws of the association, show that the principal purpose and object of the association issuing the certificates, was not to enhance the estates of the members, but to provide a fund for the benefit of their families and those dependent upon such members. "The fund . . . was not an asset of the estate of the testator; nor was it ,a *debitum in presenti, solvendum in futuro*. . . . Nor could the administrator apply the fund as *de bonis testatoris*." Graham v. Allison, 24 Mo. App. 516; Thomas v. Cochran, 46 L. R. A. 160. (4) The words "legal representatives," as used in the benefit certificates, mean heirs at law and should be so construed. Loos v. Insurance Co., 41 Mo. 538; Northwestern Masonic Aid Ass'n v. Jones, 26 Atl. 253; 1 Cooley's Briefs, 809.

ELLISON, J.—A. F. Hendrix died in Howard county, unmarried. In his life time he made a will and appointed the plaintiff as his executor. As such executor plaintiff received payment of two beneficiary certificates of insurance for two thousand dollars each. The defendant Marian N. Peters was engaged to be married to deceased and the other defendants, Mary H. Hall and Magdalen L. Hendrix, are deceased's only sisters and heirs. Defendant Marian claimed the fund under the will and the other defendants denied her right and themselves made claim thereto as only heirs of deceased. In this situation plaintiff as executor brought this action to have the court determine to whom it should be paid. The defendants Mary and Magdalen answered jointly and Marian filed her separate answer. The circuit court rendered judgment for the former and against the latter.

The two certificates were made payable to Hendrix's mother, who died before he did. The certificates provide that "In the event of the death of the beneficiary

prior to that of the member, or in case none is named, the benefit then to be payable to the legal representatives of the member." We are thus left to the provisions of the incorporation and by-laws of the association and the will to determine to whom the money should be paid. The will reads thus:

"First, I desire that my funeral expenses and just debts be paid out of my estate as soon as practicable after my decease.

"Second, I give and bequeath to my beloved sister, Mary H. Hall, of Carthage, Missouri, all my furniture, jewelry and other articles or personal property of which she may have charge at the time of my death, absolutely, and likewise, I give and bequeath to my beloved sister, Magdalen L. Hendrix, of Fayette, Missouri, all of my furniture, jewelry and other articles of personal property of which she may have charge at the time of my death, absolutely.

"Third, I give, devise and bequeath all the rest and residue of the property of which I may die seized, real, personal and mixed, absolutely, to Marian N. Peters, of Middletown, Dauphin County, Pennsylvania."

Under the provisions of the third clause Marian will get about $4,500; but, as already stated, she claims the will also gives her the funds arising from the two beneficiary certificates.

The articles of incorporation declare that the object of the association is "The equitable distribution of the fund among the families or beneficiaries of deceased members." They further declare that any number of certificates not exceeding three "may be issued to one member, and each certificate shall entitle the heirs, or legal representatives or designated beneficiary" of a deceased member to $2,000 benefit.

They further provide that a change of beneficiary may be made with the consent of the association, but that "No change shall be consented to unless the new beneficiary shall be the wife, relative, legal representa-

tive, heir or legatee of the member, except that if the certificate was issued for the benefit of others than the wife and children of the member, it may be changed so as to be payable to creditors."

It will be seen that the certificates naming the deceased's mother as beneficiary and in case she died, then his "legal representatives," there could not be a failure of a beneficiary; for if the one named died, or if none were named, the legal representatives were designated as the beneficiary.

But defendants, the sisters, claim that the object of the association was for the protection of the family of deceased and therefore the term "legal representatives" should not be given its usual and general meaning (executors or administrators) but should be said to mean the legal heirs of deceased. Frequently the words "legal representatives," on account of the connection in which used, are given an interpretation different from what they generally signify. They are frequently shown to mean heirs as here claimed. [Loos v. Insurance Co., 41 Mo. 538.] But the connection in which used in this instance will not justify a meaning differing from that usually given them. [Insurance Co. v. Bank, 121 Mo. App. 479, 487.]

The statement of the object as being to provide and distribute a fund for the families of the members, or their beneficiaries, does not afford ground for a departure from the usual meaning. In the first place there is no showing that the sisters were of deceased's family. That relation to him, alone, would not necessarily make them his family or of his family. And if it did, they would still not be helped by the declared object. For the statement is not absolutely to provide for the families of decased members, but for such families or beneficiaries of the members. In addition, the further connection in which the words are used show we ought not to allow them a meaning different from that generally given. The other provisions above quoted

from the articles of association show that the word "heirs" is used where "heirs" are meant and a distinction is clearly made between that word and the term "legal representatives," for both designations run through the articles, following one another, and it cannot be said in any reason to be a mere fault of tautology. [Sulz v. Insurance Co., 145 N. Y. 563.]

But it is claimed that the statute itself (sec. 7908, R. S. 1899) carries out the idea that heirs are meant and not legal representatives in the sense of executors or administrators. For it is said if that could be, then creditors could take that which was primarily intended for the family and thus would result an interpretation which would be in the face of a statutory declaration of policy. But the statute only prevents creditors from taking the fund belonging to a debtor beneficiary. The statute, while exempting the fund from debts of the beneficiary, in no wise prevents a fund payable to the member's legal representatives from being a part of his estate; the only difference would be in the manner of distribution. [Kelly v. Mann, 56 Iowa 625.] It reads that the proceeds of such certificates shall not be taken or seized by process of law for any debt of a certificate holder or beneficiary.

While the statute means that the creditor cannot appropriate the fund to the payment of his claim against the beneficiary, yet it does not apply, of course, to a case where the beneficiary is himself the creditor. And so it has been held by the St. Louis Court of Appeals, in an opinion by Judge BARCLAY, that the statute did not disable a member of such association from making his creditors his beneficiaries, and that too by the designation of "executors or administrators." [Pietri v. Seguenot, 96 Mo. App. 258; Williams v. Carson, 9 Baxt. 516.] It thus appears clear that the policy of the statute is not to prohibit the estate, or even the creditors, from being the beneficiary of a benefit certificate.

The result of these observations is to show that

there is nothing emanating from the deceased, or the association, to signify that any but the ordinary and usual meaning was to be given to the words "legal representatives;" and since those words would mean, in effect, the deceased's estate, it follows that the provision of the will bequeathing the residue of the estate to his financee gave her the fund in controversy. [The People v. Phelps, 78 Ill. 147.]

It is perhaps well to say that while the articles of incorporation of this company permit creditors to be designated as beneficiaries as already stated, yet in the absence of such designations, and the legal representatives or estate are designated, it does not follow that creditors could take the fund under the provisions of the statute. The fund would belong to the estate free from debts. [Sulz v. Insurance Co., 145 N. Y. 563.]

But we are cited to the case of Graham v. Allison, 24 Mo. App. 516, decided by this court, as controlling the question in favor of the sisters. We do not think the case applies. There, the policy of insurance was payable to the "legal heirs" of the insured unless otherwise directed by his will. He died leaving a will that the balance of his "property of all kinds" be divided between his brother and sister. It was held that the fund arising from the policies was not deceased's property; that it belonged to all the "legal heirs" as designated in the policy; and that the power of change of beneficiary was a naked power of appointment which the will did not attempt to execute.

But in this case the designation in the benefit certificates themselves is to the legal representatives of the deceased, and *thereby* the fund became a part of the estate and *in that way* became a subject for application of the will in disposing of the estate to deceased's fiancee.

An additional argument against the fiancee getting the fund is based on the terms of the will itself, which, as shown above, reads that the deceased bequeathes to her "all the rest and residue of the property of which I

may die seized, real, personal and mixed." The point is made on the effect which should be given to the word "seized." It is insisted that since there is nothing to explain what was meant by the use of that word, we must give to it its technical meaning. Much high authority is cited to sustain this view.

In Leach v. Jay, 6 Ch. Div. 496, plaintiff brought suit to recover certain real estate, claiming as devisees under the will of Anne Roberts. While Anne was entitled to the property in question and was in law the owner of it, she had never entered into possession, the property being claimed and occupied by the widow of one Roberts, whose title Anne had as his sole heir. Anne devised to plaintiff "all real estate of which I may die seized." The court held that such a devise did not pass the property in question, saying:

"I have to construe this very concise devise. . . . There is no context. Now what is the rule of law? The rule of law is, no doubt, to ascertain the meaning of the expressions used by the testator—not to speculate or guess what the meaning may have been. The primary rule of construction . . . is this—that where there is no context you are to construe the will according to the ordinary grammatical meaning of the words used. Then there is a subsidiary rule laid down in Roddy v. Fitzgerald, 6 H. L. C. 823, that technical words shall have their legal effect, unless, from the context it is shown they bear another meaning.

"In this particular will the testatrix, for what reason I know not, has used a technical word—a word not only technical, but a word that has no signification in ordinary language at all. It is a purely technical word; and it appears to me that the whole of my duty consists in ascertaining whether she was, at the time of her death, 'seized'—according to the technical meaning of that technical term of this real estate.

"The facts as stated in the claim are these. . . . Therefore the possession has been held adversely to Anne

Roberts and her devisee from the time of the death of
Robert Roberts. That being so, it is clear, according
to law, that the legal seizin . . . was destroyed and not
restored at the time of her death. She had not then,
either in law, or in fact, any seizin. As far as this ques-
tion is concerned it was not real estate of which she
died seized, and that being so, whatever I may guess as
to her meaning, however odd or capricious I may think
such a will may be, I have no means of correcting it,
or altering it, but I must decide it upon its literal mean-
ing."

On appeal this decision was affirmed and in the
opinion, 9 Ch. Div. 42, it is said:

"I do not think we can differ from the master of
the rolls in this case. This lady, for some reason or
motive of her own, or for no reason, chose to use one of
the most technical words in our law. The word has
acquired no other meaning than its technical meaning,
it has never got into ordinary use; therefore we are not
at liberty to attribute to it any other meaning merely
because we suppose that the testatrix did not know the
true meaning of the word."

Another justice in concurring said: "I will only
add one observation with respect to an argument of Mr.
Davey which impressed me. He said that in all prob-
ability the testatrix did not know the technical meaning
of the word seisin, and that the court ought not to attrib-
ute to her a meaning which she did not herself attach
to it. But we must attach some meaning to the word,
and if we are not to take the proper meaning, but some
other meaning, what other meaning is it to be? If we
are to guess at the meaning which the testatrix attached
to the word, where are we to stop? Therefore it seems
to me that the word must either be meaningless, or else
must have its proper technical meaning."

It is therefore urged under cover of these and other
adjudications that as deceased could not have been

seized—could not have died seized—of the funds arising out of these certificates of insurance, for the reason that he was never possessed of them, he could not have intended to pass or bequeath them by the will. But the rule cannot be allowed to have any effect on this controversy for the reason that allowing its full force, it has no application, since the word "seized" in its technical sense, is generally not applied to personal property. In its technical general sense it pertains to real estate, as in the cases from which we have taken the foregoing extracts.

The truth doubtless is that the word was intended to apply to real estate if the testator had any at his death. Cases are not infrequent where one has title or interest in real estate of which he is not aware when he makes his will. So one may become possessed of real estate after he makes his will. Therefore, when he provides that all his property shall go to a certain party he very properly uses terms which will cover all that he *may* have at the time of his death. Thus viewed, the will reads properly enough, and the word "seized" finds its proper application to the contingency of the testator having real estate.

But, be these suggestions as they may, and without standing on what the word might apply to, we are satisfied that where the amount of an insurance policy is payable to the assured's legal representatives, that is, to his estate, unburdened by a trust or change for any one, he may dispose of it by will.

The judgment will be reversed and cause remanded, with directions to enter judgment for defendant Marian N. Peters. All concur.