[Civ. No. 4246.   First Appellate District, Division One.—January 26, 1923.]

NEW YORK LIFE INSURANCE COMPANY, Plaintiff, v. BANK OF ITALY, Executor, etc., Defendant; ELLA NEWMAN, Respondent; LAYO NEWMAN, Appellant.

[1] Life Insurance — Community Interest of Wife — Invalid Gift by Husband.—Where the premiums on an insurance policy issued on the life of the husband are paid entirely from community funds, the policy is a community asset and, in view of the provisions of section 172 of the Civil Code, the husband cannot make a valid gift thereof, by naming a third party as beneficiary, without the written consent of the wife; and where the husband attempts to do so, the transaction is a nullity as to the wife, and upon his death she is entitled to one-half of the proceeds of the policy.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Walter Perry Johnson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Theodore L. Breslauer and Alfred F. Breslauer for Appellant.

Sapiro & Levy for Respondent.

Knight, Boland, Hutchinson & Christin as *Amici Curiae* on Petition for Rehearing.

TYLER, P. J.—This action is one to determine conflicting claims to the benefits of a life insurance policy. The facts giving rise to the controversy are as follows:

On the eleventh day of July, 1905, the plaintiff, New York Life Insurance Company, issued a twenty-year tontine endowment policy on the life of one Charles J. Newman. By its terms the policy was made payable to the estate of the insured, but it expressly provided that the beneficiary named therein might be changed upon application to the company. Accordingly, in the year 1907, this privilege was

exercised by Newman, and Hattie Vogel, his sister, was substituted as beneficiary. Eight years later a change was again made, the beneficiary substituted on this occasion being one Jennie Lehman, who thereafter died. After her death, on September 24, 1920, the insured designated his brother Layo Newman as beneficiary, and shortly thereafter died, to wit, on December 11, 1920. One of the privileges provided for under the policy permitted loans to be had thereon, and the insured exercised this privilege on October 4, 1920, by borrowing the sum of $7,300 upon its security.

At the date the policy was issued the insured and the defendant Ella Newman were husband and wife, their marriage having occurred on the twenty-fifth day of August, 1891. At this time the husband was not possessed of any separate property, and the premiums upon the policy amounted to the sum of $527.80 annually, and they were paid entirely from community funds, and the total amount paid thereon aggregated $8,440.80. The wife, Ella Newman, never gave her consent to the designation of Layo Newman or the other beneficiaries preceding him, and in fact she knew nothing of the existence of the policy until after the death of her husband, and no consideration was paid by the brother, Layo, for his substitution as such beneficiary. At the date of the death of Charles J. Newman there was due and payable on the policy in excess of the loan to him the sum of $2,912.

During the course of the administration of his estate the policy came into the possession of the executor, the Bank of Italy. Conflicting claims having been made upon the insurance company for the amount due under the policy it impleaded all the claimants in this action, and deposited the balance due, less certain expenses, into court, and the company was thereupon dismissed as a party, and the action thereafter proceeded upon the issues joined between the widow and the brother of the deceased.

[1] It was claimed below on behalf of the widow that the designation of the brother as the beneficiary operated as a gift of the policy and its proceeds, and was therefore in violation of section 172 of the Civil Code restricting gifts of community property without the written consent of the wife. The trial court concluded that as to one-half of the proceeds of the policy, this contention was sound, and judg-

ment went in favor of Ella Newman, the widow, for her portion thereof, and Layo Newman, the brother, appeals.

It is the contention of the appellant that there was no gift to him within the meaning of the law; that the proceeds of the insurance policy not having become payable until the death of the insured, they never became community assets, but belonged to him as the beneficiary named in the policy. It is further claimed that if the transaction partakes at all of the character of a gift of community funds such gift is to be limited strictly to the amount of annual premiums for which the marital community had not already been reimbursed before the policy became payable.

It is conceded that appellant, Layo Newman, is entitled to one-half of the benefits of the policy, and that such amount is the sum of $1,399.25.

The question thus presented involves the extent and nature of the wife's interest in the common property of the spouses.

The community property system, which has been adopted in some of the southwestern and Pacific states, has suffered many changes, chiefly in the enlargement of the wife's power and her interest in the community assets, and the courts of the various states where the system prevails are widely apart in the conclusions reached as to the rights of the spouses in the various characters of gains accruing to the marital relation. According to the rule which prevails in Texas an insurance policy issued on the life of the husband, although the premiums are paid from the community estate, unless so paid with intent to defraud the wife, is considered his separate property. (*Martin* v. *McAllister,* 94 Tex. 567 [56 L. R. A. 585, 63 S. W. 624].) While the decisions of this state are not in complete harmony upon the subject it must be conceded that the case last cited is declaratory of the rule accepted in that state. The statutes of Texas vest the husband with the absolute power of control of the common property. Hence there the rights of the wife are said to be passive, and the husband's active. His control is absolute unless tainted by fraud against the wife. He may sell, barter, or give it away.

In the state of Louisiana, where the community system also prevails, the same question has arisen, and it is there held that the proceeds or avails of insurance policies on the

life of one of the spouses are either common property or separate property of the estate of the assured, depending upon whether such assured was married or single when the insurance contract was made, and not upon the marital status at the time of death. (*Succession of Budding,* 108 La. 406 [32 South. 361]; *Succession of Le Blanc,* 142 La. 27 [L. R. A. 1917F, 1137, 76 South. 223]; *Succession of Veneuille,* 120 La. 605 [47 South. 520].) But in that state the community is entitled to have payments of premiums reimbursed from such separate estate (*In re Mosemans,* 38 La. Ann. 219); and in so far as any restrictions are imposed on gifts by the husband, those restrictions apply to insurance policies the same as other classes of personal property. (*New York Life Ins. Co.* v. *Neal,* 114 La. 652 [38 South. 485].)

In our own state a husband's testamentary and dispository. powers over the community property are limited and restricted. Under section 172 of the Civil Code, where a gift is made by him of such property without the written consent of the wife, the transaction is a nullity as to her. Accordingly, it has been held that where a testator after marriage took out an insurance policy, on which he paid his premiums from his earnings, the insurance money was common property, to one-half of which the wife was entitled as survivor. (*In re Stans Estate,* Myr. Prob. 5.) To the same effect is the case of *In re Webb,* Myr. Prob. 93, which lays down the doctrine that where a decedent has paid the first third of the amount of premiums on a policy of insurance out of his earnings before marriage, and the remainder from those made subsequent thereto, one-third of the proceeds of the policy belong to his separate estate and the remainder to the common property.

Counsel for the appellant seeks to distinguish the rule established in these cases from the instant one upon the ground that in both of them the court was dealing with and concerned only with a situation where the beneficiaries were fixed at the time the policies were issued, it being said that in such a case the community estate being the exclusive beneficiary is clearly possessed of a chose in action, and therefore the proceeds of the policy are community property. We fail to see how or in what manner the fact that the insured had the right to change the beneficiary can possibly alter the

character of the proceeds of the policy in question. It is true that under a policy reserving to the assured the right to change the beneficiary the interest of the designated person prior to the death of the insured is a mere expectancy in an inchoate or incompleted gift, which is subject to revocation at the will of the insured, and that the power of revocation which would defeat it might be exercised up to the moment of his death. When, therefore, the deceased substituted the different enumerated persons in the place of his estate as beneficiaries he initiated a gift which, in the case of appellant, became complete by the death of the insured without revocation. And this is so notwithstanding that the premiums were paid from community funds. (*McEwen* v. *New York Life Ins. Co.*, 23 Cal. App. 694 [139 Pac. 242]; *Shoudy* v. *Shoudy,* 55 Cal. App. 447 [203 Pac. 437].) But this in no manner affects the wife's right to her share in this property. The chose in action represented by the policy belonged to the community because of the fact that community funds had been paid as the consideration for its acquisition. The insured owned the property as a community asset by reason of the fact that it was purchased with community funds. Respondent is not here claiming upon any right which she might have acquired through the act of the insured in making his estate the original beneficiary. Her rights are here predicated and bottomed upon the fact that the policy was a community asset of equal dignity with those of a tangible nature, and the *quantum* of the proceeds which the assured could bestow upon others in such a case was his half, and his half only. The question, therefore, as to what rights or what interests a beneficiary acquires in a policy of insurance prior to the death of an insured, and at what moment his expectancy ripens into a vested interest, is one with which we are not here concerned.

The appellant has cited us to the case of *Shoudy* v. *Shoudy, supra,* as being opposed to this contention. We do not so consider it; but, on the contrary, we are of the opinion that the doctrine there announced is in full harmony with the views herein expressed.

In that case the divorced wife of the deceased was a former beneficiary under the terms of an insurance policy. Her claim was there based upon that fact. There was no proof that the premiums were paid from community funds

or that the husband held the policy as a community asset. Her community rights had been settled and terminated by a divorce proceeding, and she relied for her claim solely upon her status as a former beneficiary under the policy.

As above pointed out, respondent makes no such contention. On the contrary, she does contend that the policy was the property of her husband, that it was a community asset, and that as such she succeeded to one-half thereof upon his death, a right which the husband could not impair by any secret and gratuitous action on his part.

What we have said disposes of the contention that in order to be classed as community property the proceeds of the insurance must actually have become property of the spouses during their joint lives. The interest of the wife *eo instanti* ripened and was payable at the instant of the husband's death. (*Castle* v. *Castle,* 267 Fed. 521; *Burdett* v. *Burdett,* 26 Okl. 416 [35 L. R. A. (N. S.) 964, 109 Pac. 922]; *Walker* v. *Peters,* 139 Mo. App. 681 [124 S. W. 35]; *Petty* v. *Wilson,* 4 L. R. Ch. App. 574.)

To recapitulate, the gift to appellant was incomplete and revocable up to the time of Charles Newman's death. At that time his rights as beneficiary became fixed, and at the same moment the community interest of the wife vested in her. So far, therefore, as the husband's interest was concerned the gift was binding upon him to the extent thereof, but the wife not having given her consent thereto in the manner indicated by the statute the transaction as to her was a nullity.

For the reasons given the judgment is affirmed.

Richards, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on February 23, 1923, and the following opinion then rendered thereon.

THE COURT.—Certain insurance companies *amici curiae* have filed a petition for a rehearing, wherein it is conceded that while the decision of the court is correct in so far as it concerns the rights of the parties before it, certain language used therein is susceptible of inferences which might create confusion in actions in which the rights of insurance com-

panies as between themselves and their beneficiaries come in question. It is therefore suggested that the court should discuss the right of the insurer to make payment to the beneficiary, whatever other claims may be made, provided such payment is made prior to any notice of adverse claims. No such question was here involved, as the Insurance Company had impleaded the parties and paid the proceeds of the policy into court. Whatever our views might be on the subject, the expression thereof would be purely *dicta* and of no value. We are not disposed, therefore, to comply with the request. Whatever questions other than the ones decided might possibly arise between the different parties to the contract of insurance, they were not before us, and are in no manner affected by the decision.

Rehearing denied.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 26, 1923.

All the Justices concurred.