## SHIELDS v. BARTON.
### No. 4683.

Circuit Court of Appeals, Seventh Circuit.

June 21, 1932.

Fletcher Lewis, John F. Manierre, and Minier Sargent, all of Chicago, Ill., for appellant.

George S. Marks, of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

The Equitable Life Assurance Society issued two insurance policies to Jennie Shields,

deceased, upon which, by virtue of the death of the insured, it admitted a liability of $2,-592.24. Two parties asserted conflicting interests in said sum, and the insurance company brought the money into court and asked to be relieved from further liability to both claimants.

Appellant made claim to all, and in the alternative, to a part of the sum thus deposited, on the ground that it was a community fund created by the contributions of himself and the said decedent, his wife. Olive N. Barton made claim to the money on the ground that she, a sister of the insured, was named as sole beneficiary in the policy.

The claimants live in different states. Their pleadings presented the issues, which were few. The court filed its opinion and awarded judgment to appellee for the amount due on the policy. The amount of the recovery is not in question, nor is there dispute over the terms of the policy. Appellee was named as the sole beneficiary. Federal court jurisdiction is dependent on section 41, title 28, par. 26, USCA, which is applicable.

Controversy arises out of the disputed application of the Washington statute respecting community property. The determination of the issue depends first, upon what facts are disclosed, and second, the application of the Washington law to such facts.

■ Judgment against appellant was entered upon the pleadings. The facts stated in the answer of Shields, supplemented by the admissions or statements in the answer of appellee, must be accepted as true.

Appellant's answer stated that he was duly appointed administrator of the estate of his deceased wife, the insured, by the Superior Court of King County, Washington; that his wife died a resident of Washington, June 19, 1930 (the court stated in its decision that "the insured at the time of the issuance of the policy and up to the time of her death was a resident of Washington"); that she was married to appellant June 15, 1922; that the policy issued to the said deceased reserved to the insured the right to change the beneficiary; that four-fifths of the premiums paid under said policy were paid from community funds; that at the time the policy was issued, the insured was unmarried; that the first two premiums of $176.92 and another premium of $96.64, all paid prior to June 15, 1922, were paid by the insured from her separate estate; that shortly after their marriage, deceased agreed to change the above-named beneficiary and substitute appellant as the sole beneficiary therein; that in consideration of such agreement, all subsequent payments of premiums were made from community funds belonging to said deceased and appellant; that four-fifths of all of the premiums paid on the said policy were made from the community fund upon appellant's reliance upon deceased's agreement to change the said beneficiary; and that said appellant believed said change in beneficiary had been made.

Appellee denied that deceased agreed to change the beneficiary named in said policy and denied that the premiums were paid out of the community funds. She alleged that the said deceased had a separate estate when she married appellant and that the premiums were paid out of said separate property of said deceased. The decree having been based upon the facts alleged in the pleadings, this court must assume, as did the District Court, that, aside from the first three premiums aggregating $450.48, the premiums which kept the policy alive were paid out of community property belonging to the deceased and appellant, pursuant to an agreement wherein deceased promised to make appellant the sole beneficiary in the policy, upon which agreement the appellant relied when the subsequent premiums were paid out of said community property.

■ The district judge placed his decision on the ground that sections 6892 and 1342 of Remington's Compiled Statutes of Washington, defining community property and the descent of community property, did not apply to proceeds of life insurance policies. Two cases, Ticker v. Metropolitan Life Ins. Co., 11 Orleans App. 59, and Martin v. McAllister, 94 Tex. 567, 63 S. W. 624, 56 L. R. A. 585, support this conclusion. The contrary conclusion is reached in New York Life Ins. Co. v. Bank of Italy, 60 Cal. App. 602, 214 P. 61, and Modern Woodmen of America v. Gray, 113 Cal. App. 729, 299 P. 754.

Appellant argued that the Washington statute was taken from the California statutes, and the decisions of the courts of that state should be given controlling weight in the absence of any direct authority by the Washington Supreme Court.

The Washington statutes are set forth in the margin.[1]

---

[1] "Sec. 6892. Community Property Defined—Husband's Control of Personalty. Property, not acquired or owned as prescribed in the next two preceding sections, acquired after marriage by either husband or wife, or both, is community property. The husband shall have the management and control of community personal property, with a like power of disposition as he has of his separate per-

Two Washington decisions, Parker v. Parker, 121 Wash. 24, 207 P. 1062, and Marston v. Rue, 92 Wash. 129, 159 P. 111, cited by appellant, but applicable to a different fact situation, are illuminating.

While much impressed by the reasons which Judge Woodward assigned for holding life insurance to be outside the application of community property laws, we have concluded to accept (though not without some hesitancy) the California decisions in Modern Woodmen of America v. Gray, 113 Cal. App. 729, 299 P. 754, and New York Life Ins. Co. v. Bank of Italy, 60 Cal. App. 602, 214 P. 61, as the correct statement of the Washington law on this subject. Until the Supreme Court of Washington speaks, we can merely endeavor to anticipate its holding by a study of its decisions on somewhat kindred questions, as well as the decisions of the state from which Washington took its statute. Our conclusion finds support in the fact that the policies in question were described as income bonds; that is, they called for the payment of annuities to the insured after premium payments for fifteen years, and in case of the death of the insured before the payment of any annuity, the payment to the beneficiary of a sum equal to all the premiums that had been paid.

 However, we think it clear under the Washington decisions, as well as under the statute itself, that the share of this fund which was earned prior to marriage did not become community property nor pass to the surviving spouse upon the insured's death. In other words, one-fifth of this fund passed to appellee.

 Moreover, appellant's right to any part of the fund is dependent upon his establishing the facts set forth in his answer, to-wit, that the premiums were not paid by the deceased out of her separate property or earnings, but were paid from community property. Failure to establish these facts will defeat appellant's recovery.

 Should the court find that payment of premiums was from community property, after deceased's marriage to appellant, it will be confronted by another question, namely, the meaning of the term "testamentary disposition" as it is used in section 1342.

What is the meaning of "testamentary disposition" as used in this statute? Obviously, it includes wills, but does it not also embrace insurance contracts? We see no reason why a strict construction should be given to this expression. It is common knowledge that much of the property which passes upon the contingency of death is insurance. Liability under the ordinary life insurance policy is contingent upon the insured's death. It is subject to change and becomes effective very much like a will. It is written by order of the deceased with the expectation that the proceeds will pass to dependents or other objects of the deceased's bounty, upon his death, much as under will. Testamentary disposition has been so defined as to include insurance policies.[2] We of course must admit that none of these cases presents our exact question.

No decision of a court of a state where laws defining community property exist has been cited, and we have found none which construes the term "testamentary disposi-

---

sonal property, except he shall not devise by will more than one-half thereof.

"Sec. 1342. Descent of Community Property. Upon the death of either husband or wife, one-half of the community property shall go to the survivor, subject to the community debts, and the other half shall be subject to the testamentary disposition of the deceased husband or wife, subject also to the community debts. In case no testamentary disposition shall have been made by the deceased husband or wife of his or her half of the community property, it shall descend equally to the legitimate issue of his, her or their bodies. If there be no issue of said deceased living, or none of their representatives living, then the said community property shall all pass to the survivors to the exclusion of collateral heirs."

[2] 37 Corpus Juris, § 38, Insurance.
"* * * While in respect to the beneficiary a policy of life insurance is sometimes deemed to be in the nature of a testament. * * *"
Supreme Council Catholic Knights v. Densford (Ky.) 56 S. W. 172, 49 L. R. A. 776.
"A certificate issued by a benefit society to a member, payable on his death to beneficiaries named therein, is to be construed as a will."
Duvall v. Goodson, 79 Ky. 228.
"A life policy for the benefit of the family of the person procuring, though not a testament, is in the nature of a testament, and in construing it the courts should treat it, as far as possible, as a will, as in so doing they will more nearly approximate the intention of the persons the destination of whose bounty is involved in such cases."
Continental Life Insurance Co. v. Palmer, 42 Conn. 60, 19 Am. Rep. 530.
This instrument (insurance policy), being testamentary in its nature, should be interpreted by the same rules. "It will aid us in the solution of this question to consider briefly the nature, object, and purpose of this policy. In form it is a contract for the payment of money. In substance it closely resembles estate left by a deceased person. Its purpose is a provision for the benefit of the family after the death of the husband and father. It is in some sense an estate left by the deceased."
Landrum v. Landrum's Adm'x, 186 Ky. 775, 218 S. W. 274, 276.
"It may be conceded that a policy of life insurance for the benefit of the family of the insured is testamentary in its character, and that by so treating it the intentions and purposes of the insured may be more nearly approximated; and in the designation of the beneficiaries the language of the policy should receive the same construction as if used in a will. * * * Treating the policy touching the disposition of the proceeds in the instant

tion" to include disposition by insurance contract. The section of the statute on descent of community property contemplates the right of the deceased spouse to dispose of one-half of the community property. In other words, only one-half of such community property goes absolutely to the surviving spouse. The term under consideration, "testamentary disposition," relates only to the other one-half. Again we are asked to make our decision unaided by any Washington Supreme Court decision.

The purpose of the statute and the selection of a term which is more comprehensive than the word "will" both indicate that testamentary disposition was not limited to disposition by will. If disposition by will only were intended, why did not the Washington Legislature so say? Why did it use the more generic phrase? If testamentary disposi-

tion be a term which is more comprehensive than disposition by will, then what could be more naturally included within its meaning than a life insurance policy? The similarity between disposition by life insurance and by will is at once apparent. The date of the happening of the events is the same—the death of a maker of the documents. The positions of the legatee and the beneficiary are legally quite similar. Neither has any vested or contractual rights which can not be lost either by the drawing of a new will or a change in the beneficiary. If we pass from the legal similarities to the more practical ones, such as the purposes which actuate one in drawing a will and in taking out life insurance, in the selection of or naming the legatee and the beneficiary, the date when the intended and arranged-for help to legatee or beneficiary shall occur, namely, upon the death of the insured or the testator, we are even more strongly impressed by the sufficiency of the reasons which caused legislative action to choose the phrase "testamentary disposition" rather than the word "will" to define the legislative thought.

Our conclusion is that the legislature intended to give to one spouse the right to dispose of one-half of the community property, but denied the said spouse the right to exclude the other spouse from the other one-half of the community property. The same reason which causes us to include life insurance within the provisions of this statute compels us also to adopt a construction of the phrase "testamentary disposition" as will recognize the ordinary and usual method of disposition of life insurance, namely, by designating the beneficiary in the insurance policy and providing for a change in such beneficiary.

We conclude therefore that testamentary disposition includes disposition by a life insurance policy effective upon the death of the insured.

The decree is reversed, with directions to proceed in accordance with the views here expressed. The costs of this appeal shall be divided equally between the parties.

---

case as of a testamentary character, and to be construed as a will, the intention of the insured. * * *"

Young v. O'Donnell, 129 Wash. 219, 224 P. 682, 684. "Appellant insists that there are four salient reasons why this instrument [deed] should be considered testamentary in its nature: First, it is especially provided that this deed is to take effect only after the death of the grantor; second, the grantor reserves to himself absolute dominion and control over the property, and the full right to the use of the same during his lifetime; third, it is especially provided that the deed is to be absolutely of no effect and null and void in case the grantee should die before the grantor; and, fourth, subsequent to the * * * showing by his interpretation that he did not intend by the prior deed to his son to convey a present interest. After examining a vast number of authorities, and analyzing the provisions of the instruments involved, we conclude that appellant's contentions are correct. * * * The essential characteristic of an instrument testamentary in its nature is that it operates only upon and by reason of the death of the maker. Up to that time it is ambulatory. By its execution the maker has parted with no rights and divested himself of no modicum of his estate, and per contra no rights have accrued to, and no estate has vested in, any other person. The death of the maker establishes for the first time the character of the instrument. It at once ceases to be ambulatory; it acquires a fixed status and operates as a conveyance of title." 14 R. C. L. § 539. Mut. Life Ins. Co. v. Cummings, 66 Or. 272, 126 P. 982, 133 P. 1169, 47 L. R. A. (N. S.) 252; Bolton v. Bolton, 73 Me. 299; Chartrand v. Brace, 16 Colo. 19, 26 P. 152, 12 L. R. A. 209, 25 Am. St. Rep. 235; Union Mut. Aid Ass'n v. Montgomery, 70 Mich. 587, 38 N. W. 588, 14 Am St. Rep. 519.