[L. A. No. 25777. In Bank. July 1, 1960.]

REBECCA TYRE et al., Appellants, v. AETNA LIFE INSURANCE COMPANY (a Corporation), Respondent.

Wiseman & Elmore and Aaron Elmore for Appellants.

William K. Young, Herman F. Selvin and Chapman, Frazer, Lindley & Young for Respondent.

TRAYNOR, J.—Plaintiffs, the widow and three adult daughters of the insured, appeal from a judgment for defendant in an action to recover the widow's community property interest in the proceeds of a life insurance policy.

The facts are not in dispute. Rebecca Tyre (hereafter called plaintiff) and Louis Tyre, the insured, were married in Los Angeles in 1917 and lived there as husband and wife until Mr. Tyre's death in 1957. Defendant issued its policy in the face amount of $20,000 upon the life of the insured in 1926. All the premiums were paid from community funds.

The original beneficiary was the Tyre Brothers Glass Company. Upon the insured's retirement from the business in 1946, he changed the beneficiary of the policy to make it payable to plaintiff in a lump sum. In 1950 the insured exercised his option under the policy of selecting an alternate settlement. He directed that upon his death plaintiff receive an annuity based on her life expectancy at that time. If she failed to survive him by 10 years, the monthly payments were to be divided among the three daughters for the balance of the 10-year period only. As so amended the policy continued in force for the remainder of the insured's life and was in effect at his death.

Plaintiff was 59 years and 8 months of age at the time her husband died. An average person of that age has a life expectancy, established by standard mortality tables, of 14 years. Under the terms of her husband's choice of settlement, plaintiff will receive $20,664 in installments of $123 per month if she lives out her full expectancy. If she fails to survive the 10-year period, defendant's total liability will be $14,760. To receive $10,000, plaintiff must survive 6.77 years. Plaintiff has suffered three heart attacks and the trial court found that her life expectancy may be less than that of an average person of her age.

The insured changed the method of payment without plaintiff's knowledge or approval. Since the policy had been in the possession of a bank as collateral security for a loan, plaintiff did not learn of the change until a few months after her husband's death. She promptly disavowed his choice and requested payment of the face amount of the original policy in cash. Defendant refused to alter the method of settlement. Plaintiff and her daughters thereupon brought this action praying for $10,000 in cash representing plaintiff's community interest and a declaration that the remaining $10,000 be paid according to the insured's selection at $61.50 per month. Defendant contends that it is not obligated to pay any sum under the policy except $123 per month for plaintiff's life or 10 years, whichever is longer.

A policy of insurance on the husband's life is community property when the premiums have been paid with community funds. (*New York Life Ins. Co.* v. *Bank of Italy,* 60 Cal.App. 602, 606 [214 P. 61]; *Blethen* v. *Pacific Mut. Life Ins. Co.,* 198 Cal. 91, 99 [243 P. 431]; *Grimm* v. *Grimm,* 26 Cal.2d 173, 175 [157 P.2d 841].) During the existence of the marriage the respective interests of the husband and wife in

community property are present, existing, and equal (Civ. Code, § 161a), but "the husband has the management and control of the community personal property, with like absolute power of disposition, other than testamentary, as he has of his separate estate; provided, however, that he cannot make a gift of such community personal property, or dispose of the same without a valuable consideration, . . . without the written consent of the wife." (Civ. Code, § 172.) When the community is dissolved by death, "one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent." (Prob. Code, § 201.) Both parties rely on these sections. Plaintiff contends that she became entitled, immediately upon her husband's death, to one-half of each part of the community property. Defendant contends that the insured had power to enter into the supplemental contract by virtue of his general powers of management and control and that plaintiff cannot disavow his contract.

■ Plaintiff *could not avoid a contract entered into for a valuable consideration by her husband in the course of his lifetime management of the community personalty even though it was made without her consent and temporarily affected her control immediately following his death.* Thus, in *Beemer* v. *Roher,* 137 Cal.App. 293 [30 P.2d 547] (see also *Beemer* v. *Roher,* 137 Cal.App. 298 [30 P.2d 549]), the husband invested community funds in a savings and loan "accumulative investment certificate." The wife sought immediate recovery of the entire sum and the trial court ordered payment "forthwith." On appeal the court awarded the wife her one-half community interest in the sums evidenced by the certificate, but held that she was not entitled to immediate payment because her right to recover possession was subject to the same statutory provisions and written agreements that would have governed the husband in withdrawing the funds. A relevant statute provided that holders of certificates in savings and loan institutions, including accumulative investment certificates, might not be permitted to withdraw moneys without first having given a notice of intention to withdraw not less than 30 days nor more than six months previously. (Stats. 1931, ch. 269, §§ 5.01(c), 6.01.) The husband entered into the investment in the normal course of his lifetime management of the community personalty. Under the terms of his investment, the wife's management and control of her share of the community property at her husband's death

could have been postponed at most for six months. Another type of lifetime investment that might temporarily impede distribution of the wife's community property interest is a partnership or family corporation arrangement providing for a winding up period or an option in the surviving members to buy out the community interest. (See *Wood* v. *Gunther,* 89 Cal.App.2d 718 [201 P.2d 874].)

In the present case, however, the husband's election to have the policy proceeds paid as an annuity instead of in a lump sum was not an exercise of his nontestamentary power of management during his lifetime, but an attempt to dispose of proceeds after his death. Until he died he could elect to have the proceeds paid as a lump sum or as an annuity actuarially worth that sum. Of course, as between the husband and defendant there was consideration for the change in method of payment. The right to an annuity was consideration for the surrender of the right to a lump sum payment.

Similarly there is consideration between the insurance company and the insured when the insured changes the beneficiary from one person to another. Nevertheless, it is settled that even though the insurance contract provides that the insured husband has the right to change the beneficiary without the wife's consent when she is named as such, any such change of beneficiary without her consent and without a valuable consideration other than substitution of beneficiaries is voidable, and after the death of the husband the wife may maintain an action for her community share in the proceeds of the policy. (*Grimm* v. *Grimm, supra; Blethen* v. *Pacific Mut. Life Ins. Co., supra,* at p. 101; *New York Life Ins. Co.* v. *Bank of Italy, supra,* at p. 607; *Beemer* v. *Roher,* 137 Cal. App. 293, 296-297 [30 P.2d 547]; *McBride* v. *McBride,* 11 Cal.App.2d 521, 523-524 [54 P.2d 480]; *Mundt* v. *Connecticut Gen. Life Ins. Co.,* 35 Cal.App.2d 416, 421 [95 P.2d 966]; see *Spreckels* v. *Spreckels,* 172 Cal. 775, 784-785 [158 P. 537].)

These cases recognize that although the payment of insurance proceeds is a matter of contract between the insured and the insurer, the insured's exercise of his unilateral right under the contract to select the beneficiary is testamentary in character. Similarly, the insured's exercise of his unilateral right under the terms of the policy to determine whether the proceeds shall be paid as a lump sum or in the form of an annuity is testamentary in character. Section 201 of the Probate Code gives the husband testamentary control over only one-half of the community property, and the word

"testamentary" as used in that section is not limited to formal testaments. ▮ Thus, although a wife can set aside a husband's unauthorized gift of community property in its entirety during his lifetime (*Britton* v. *Hammell*, 4 Cal.2d 690, 692 [52 P.2d 221]), she is limited to the recovery of her one-half share after his death on the theory that his testamentary powers validate the gift of his half interest. (*Britton* v. *Hammell*, *supra*; *Lahaney* v. *Lahaney*, 208 Cal. 323 [281 P. 67], concurring opinion at p. 329; note, 24 Cal.L.Rev. 306.) Similarly, a wife's gift *causa mortis* of community property (*Odone* v. *Marzocchi*, 34 Cal.2d 431, 439 [211 P.2d 297, 212 P.2d 233, 17 A.L.R.2d 1109]) and a husband's gift of a community life insurance policy (*Mazman* v. *Brown*, 12 Cal.App. 2d 272, 274 [55 P.2d 539]) have been upheld as to the spouse's community interest by reference to the testamentary power.

▮ Just as the husband cannot deprive his wife of her community interest by exceeding his testamentary powers to make gifts of more than half the community property to third persons, so he cannot defeat her interest by making a testamentary gift to her under conditions that restrict her management and control of the property. Her remedy in both situations is to disavow the gift and stand on her community rights.

Defendant contends, however, that plaintiff has chosen to accept her husband's gift of his one-half interest in the policy according to its terms and that she has thereby lost the power to set the policy aside as to her community interest. ▮ Defendant has been permitted to raise this issue for the first time in this court because the facts are not disputed and the issue merely raises a new question of law. (*Burdette* v. *Rollefson Construction Co.*, 52 Cal.2d 720, 725-726 [344 P.2d 307] and cases cited.)

▮ When the husband attempts to dispose of his wife's share of the community property as well as his own, naming her as one of the takers, she must elect between her community rights and her husband's gift. (*Estate of Wolfe*, 48 Cal.2d 570, 574-575 [311 P.2d 476]; *Estate of Moore*, 62 Cal.App. 265, 270-272 [216 P. 981]; *Estate of Ettlinger*, 73 Cal.App.2d 967, 970 [167 P.2d 738].) If she accepts the gift, she must relinquish all inconsistent claims. (*Lauricella* v. *Lauricella*, 161 Cal. 61, 69 [118 P. 430]; *Mazman* v. *Brown*, 12 Cal.App.2d 272, 275-276 [55 P.2d 539].) ▮ Under these cases an election is required here. Plaintiff has elected to stand on her community rights even though she prays for half the

community assets used to purchase the annuity in cash and the other half according to her husband's plan. Plaintiff is the sole primary beneficiary under the policy. Only in the event that she fails to survive her husband by 10 years will the alternate beneficiaries have any claim to the proceeds. Moreover, the alternate beneficiaries have joined in the prayer. In this situation, unlike the Lauricella and Mazman cases where the wife was only a partial beneficiary and the other beneficiaries asserted adverse interests, plaintiff sufficiently indicated her election by demanding her statutory share in cash and requesting her husband's share under his plan.

Although plaintiff has not lost her right to set aside her husband's unauthorized disposition of her community interest, she is nevertheless not entitled to receive his share under the terms of the policy. By electing to stand on her community rights, plaintiff has disqualified herself as the beneficiary of her husband's gift. If the primary beneficiary of a life insurance policy disqualifies himself, the proceeds are payable to the alternate beneficiary and not to the insured's estate even though the alternate beneficiary's interest was conditioned upon surviving the primary beneficiary as well as the insured. (*Beck* v. *West Coast Life Ins. Co.*, 38 Cal.2d 643, 646-647 [241 P.2d 544, 26 A.L.R.2d 979].) The husband's share of the policy therefore became payable to the three daughters upon plaintiff's disqualification as primary beneficiary.

 Defendant contends that even if plaintiff is entitled to her share in a lump sum, the daughters should receive the monthly payments only for the 10-year period that measures the company's minimum liability under the policy. Plaintiff's disqualification as the primary beneficiary, however, does not remove her life as the measurement for the annuity; otherwise, the husband's donees may be deprived of the benefit of his investment.

 Plaintiff seeks statutory interest on her recovery commencing 30 days after the date of her husband's death. (Civ. Code, § 3287.) Until she notified the company of her election to stand on her community property rights, however, the company was authorized to make payments in accordance with the terms of the policy. (*Blethen* v. *Pacific Mut. Life Ins. Co.*, 198 Cal. 91, 101-102 [243 P. 431] ; Ins. Code, § 10172.) The record does not disclose the date upon which plaintiff first demanded the payment of her community property

interest in cash. That date properly marks the commencement of interest.

The judgment is reversed and the trial court is ordered to enter judgment in accordance with the views expressed herein.

Gibson, C. J., Peters, J., White, J., and Dooling, J., concurred.

SCHAUER, Dissenting.—In my view the opinion prepared for the District Court of Appeal by Justice Herndon and concurred in by Presiding Justice Fox and Justice Ashburn (reported in (Cal.App.) 1 Cal.Rptr. 563) adequately discusses and correctly resolves the questions presented on this appeal. For the reasons therein stated I would affirm the judgment of the trial court.

McComb, J., concurred.

Respondent's petition for a rehearing was denied July 27, 1960. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.