The **MINNESOTA MUTUAL LIFE INSURANCE COMPANY**, Plaintiff,

v.

**Betty Jean SULLIVANT and Alida Sullivant, Defendants.**

**No. ED 71-C-5.**

United States District Court,
W. D. Arkansas,
El Dorado Division.

Nov. 30, 1971.

Martin G. Gilbert (Coleman, Gantt, Ramsay & Cox), Pine Bluff, Ark., for plaintiff.

Paul K. Roberts, Warren, Ark., for defendant Betty Jean Sullivant.

Richard H. Mays, El Dorado, Ark., for defendant Alida Sullivant.

## MEMORANDUM OPINION

OREN HARRIS, Chief Judge.

This interpleader action was brought by The Minnesota Mutual Life Insurance Company, plaintiff herein, for determination of the claims of Betty Jean Sullivant and Alida Sullivant, defendants, in the proceeds of a policy of life insurance on the life of Robert N. Sullivant, deceased.

The plaintiff is a corporation organized and existing under and by virtue of the laws of the State of Minnesota. It is engaged in the mutual life insurance business with its principal place of business in said state. Defendant, Betty Jean Sullivant, is a citizen and resident of Bradley County, Arkansas. Defendant, Alida Sullivant, is a citizen and resident of the State of California. Both defendants claim the proceeds of the life insurance policy. The amount exceeding $500.00, plaintiff has deposited into the registry of the court the sum of $7,405.61, being the aggregate sum payable under the policy. Jurisdiction is established pursuant to the provisions of 28 U.S.C.A. § 1335.

The plaintiff issued its policy of life insurance No. 788325 on the life of Robert N. Sullivant May 4, 1962. Alida D. Sullivant, the wife of Robert N. Sullivant at that time, was designated as beneficiary of the policy. They were citizens and residents of the State of California. The premiums were paid by the insured from community funds during the existence of the marriage relationship of Alida Sullivant, defendant, and Robert N. Sullivant, deceased, commencing May 4, 1962, with monthly payments in the sum of $13.86 per month until August 24, 1964, at which time the marriage relationship was dissolved by divorce.

Application for the insurance policy in question was made by the insured to an authorized agent of the plaintiff, The Minnesota Mutual Life Insurance Company, within the State of California. From the application, the plaintiff issued the policy presumably from its home office in St. Paul, Minnesota, transmitted it to the company's regular authorized agent in California where the agent delivered the policy to Sullivant. From the time of the issuance and deliverance of the policy to the insured in California, the premiums on the policy were paid from the insured's allotments by the Navy. The allotment was made from the insured's regular pay as a member of the United States Navy. It

is established and the Court concludes that the payment of the monthly premiums on the policy was from community funds as a result of the marriage relationship of the Deceased Sullivant and defendant, Alida Sullivant.

In 1964, Robert N. Sullivant left his family in California and moved to Arkansas. The wife, Alida Sullivant, and their child continued to live in California. Robert N. Sullivant obtained a decree of divorce from Alida Sullivant on August 24, 1964, at which time the marriage relationship between them no longer existed. No division of the property interest between them was made at the time the divorce decree was granted or at any time thereafter.

On November 7, 1964, Robert N. Sullivant married defendant, Betty Jean Sullivant. They resided in Arkansas during the existence of their marriage.

On March 12, 1965, Robert N. Sullivant made application to the plaintiff, The Minnesota Mutual Life Insurance Company, to change the beneficiary of the policy in question from Alida, his former wife, to Betty Jean, his then wife. Pursuant to the provisions of the policy, the plaintiff acknowledged the application for change in beneficiary, which was effectuated March 18, 1965. Alida Sullivant did not agree to give her consent nor in any way at any time acknowledge the change in beneficiary from her to Betty Jean. It is also established that no consideration was given in connection with the change of beneficiary. The defendant, Alida Sullivant, retained the original policy issued by Minnesota and did not learn of the change in beneficiary until after the death of the insured on September 15, 1970.

Both defendants claiming the proceeds of the policy upon the death of the insured, the plaintiff failed to pay the amount due to either. The defendant, Betty Jean Sullivant, filed a complaint against the insurance company in the Circuit Court of Bradley County, Arkansas, on January 16, 1971, seeking judgment for the sum due on the policy.

This action prompted Minnesota to interplead the funds into the registry of this court on February 9, 1971.

The defendant, Alida Sullivant, filed an answer and cross-complaint for a determination that she have judgment for the amount interplead by The Minnesota Mutual Life Insurance Company, the sum due on the policy of the deceased, Robert N. Sullivant.

The defendant, Betty Jean Sullivant, filed answer and cross-complaint for a determination that she be given judgment for the sum due on the policy. In addition to the cross-complaint of defendant, Alida Sullivant, she sought judgment against Minnesota for the total sum due from the policy, notwithstanding the results of the interpleader action and the determination of the Court as to whom should have the proceeds from the policy.

The suit was regularly scheduled for trial to a jury October 18, 1971. At the commencement of the trial counsel for the defendant, Alida Sullivant, announced that she no longer seeks judgment from the plaintiff, The Minnesota Mutual Life Insurance Company, and the case went to trial on the interpleader for a determination of the funds deposited by the plaintiff.

The defendant, Alida Sullivant, assumed the burden of establishing that she was entitled to the entire proceeds of the interplead funds due from the policy. Her contention was that the beneficiary of the policy as originally issued was irrevocable and, in the alternative, pursuant to the application for the policy originally, the company was required to issue an irrevocable policy as to the beneficiary. She claimed a mistake was made or fraud in the issuance of the policy and contended for a revision.

At the conclusion of the testimony of the defendant, Alida Sullivant, the Court ruled as a matter of law that she failed to establish that the policy contained an irrevocable clause or that there was a mistake, misrepresentation or fraud in connection with the issuance of the poli-

cy. The Court sustained a motion for a directed verdict and discharged the jury from further consideration.

At this point the defendant, Alida Sullivant, moved to amend the pleadings to include a claim for 50% of the proceeds from the insurance policy on the basis that the payments of the premiums on the policy were made with community property funds. The Court granted the motion and counsel for the parties were given an opportunity to file briefs on this question. Briefs have been filed and having the benefit of the testimony, the pleadings and interrogatories the Court proceeds to a determination on the question of whether the defendant, Alida Sullivant, is entitled to any of the proceeds from the policy.

There are two primary questions for the Court's determination. The first question is the applicable state law for determination of which beneficiary is entitled to part or all of the proceeds of the policy. The Court concludes that it is a fact question to be determined under applicable law. Since it is established that the application of the policy was made in California to a representative of the plaintiff, The Minnesota Mutual Life Insurance Company, and after being issued, the policy was delivered by the agent and representative of Minnesota in California to the insured Robert N. Sullivant, whereupon premiums were paid in California, the law of the State of California is applicable to this proceeding.

It is well established that where an insurance policy is the result of an application to an agent of the insurance company within a state, the policy after having been issued, delivered by the company's agent within the state, and the premiums paid by the insured within the state to the company, the policy becomes a contract of that state, subject to the applicable laws of said state. Where the most significant contacts of the contract are made, the applicable law of that place is controlling. New England Mut. Life Ins. Co. v. Olin, 7 Cir., 114 F. 2d 131, 136, 137; Equitable Life Assur.

Society v. Clements, 140 U.S. 226, 11 S. Ct. 822, 35 L.Ed. 497; Northwestern Mutual Life Ins. Co. v. McCue, 223 U.S. 234, 32 S.Ct. 220, 56 L.Ed. 419; New York Life Ins. Co. v. Head, 234 U.S. 149, 34 S.Ct. 879, 58 L.Ed. 1259; Mutual Life Ins. Co. v. Liebing, 259 U.S. 209, 42 S.Ct. 467, 66 L.Ed. 900.

In New England Life Ins. Co. v. Olin, supra, at page 137, it is stated:

"In Equitable Life Assur. Society v. Clements, 140 U.S. 226, 11 S.Ct. 822, 35 L.Ed. 497, the application for insurance was considered and accepted in the state where the company's home office was located; the policy was executed there and it provided that the premiums should be payable there. Yet such acts did not prevent the policy from being held a contract made in the state wherein the insured resided. In the instant case the acts done by the company at its Boston office, in connection with the loan agreements, are similar in character. The same conclusion should follow: the functions done by the company at its Boston office were acts performed under Indiana contracts."

It further stated:

"Where the question is one of ascertaining the place in which a contract is made, the facts and circumstances alone are essential."

See Appleman on Insurance §§ 7077, et seq.

If the application is made, the premiums paid and the policy delivered in one state, the law of that state controls.

Where it is established, as in the instant case, that the insured resided in the state where the policy was applied for and delivered in the state, that law is determinative. Particularly so, when the application is made to a local agent under the circumstances as here established. The Court, therefore, concludes and affirms its previous ruling that the law of the State of California is controlling as to the validity, construction and effect of the policy.

Having concluded that the law of California applies the Court now precedes to a determination of the interest, if any, the defendant, Alida Sullivant, has in the proceeds of the policy.

■ California has long since enacted laws providing for community property as between husband and wife resulting from the marriage relationship. A policy of insurance on a husband's life is community property when the premiums have been paid with community funds. West's Ann.Civ.Code §§ 161a, 172; West's Ann.Prob.Code, § 201.

■ It has now become ancient law in California that the question whether the estate between husband and wife is community or separate property is a simple question of fact. The presumption of law is that it is community property. In Re Gartland's Estate, 114 Cal. App. 269, 299 P. 757.

In Tyre v. Aetna Life Insurance Company, 54 Cal.2d 399, 6 Cal.Rptr. 13, 15, 353 P.2d 725, 727, Mr. Justice Traynor of the Supreme Court of California, for the court, stated the rule as follows:

"A policy of insurance on the husband's life is community property when the premiums have been paid with community funds. New York Life Ins. Co. v. Bank of Italy, 60 Cal. App. 602, 606, 214 P. 61; Blethen v. Pacific Mut. Life Ins. Co., 198 Cal. 91, 99, 243 P. 431; Grimm v. Grimm, 26 Cal.2d 173, 175, 157 P.2d 841. During the existence of the marriage the respective interests of the husband and wife in community property are present, existing, and equal (Civ.Code, § 161a), but 'the husband has the management and control of the community personal property, with like absolute power of disposition, other than testamentary, as he has of his separate estate; provided, however, that he cannot make a gift of such community personal property, or dispose of the same without a valuable consideration, * * * without the written consent of the wife.' Civ. Code, § 172. When the community is dissolved by death, 'one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent.' Prob.Code, § 201. Both parties rely on these sections. Plaintiff contends that she became entitled, immediately upon her husband's death, to one-half of each part of the community property. Defendant contends that the insured had power to enter into the supplemental contract by virtue of his general powers of management and control and that plaintiff cannot disavow his contract."

It is further stated in 6 Cal.Rptr. at page 17, 353 P.2d at page 729:

"Just as the husband cannot deprive his wife of her community interest by exceeding his testamentary powers to make gifts of more than half the community property to third persons, so he cannot defeat her interest by making a testamentary gift to her under conditions that restrict her management and control of the property."

Having concluded that the policy in question on the life of the deceased, Robert N. Sullivant, when issued by the plaintiff insurance company became community property between Robert N. Sullivant and defendant, Alida Sullivant, under the law of the State of California, the Court proceeds to a determination of the extent of the interest of Alida Sullivant.

The Court has heretofore concluded that the insurance policy was issued to Robert N. Sullivant May 4, 1962, while he and his then wife, Alida Sullivant, were living with their child in California. The premiums in payment of the policy were made from community funds. The premiums were paid from such funds during the time the marriage relationship existed. The premiums were paid on a monthly basis in the sum of $13.86.

■ Further, the Court has already concluded that the marriage relationship between Robert N. Sullivant and Alida

**351**

Sullivant ended by valid divorce in Arkansas on August 24, 1964. It has been held that divorce dissolves the community and, therefore, there is no community property after divorce. The divorce decree converts community property to common property and that on dissolution of the marriage by divorce the property which was community property becomes property of the former spouse in equal proportion. 15 Am.Jur.2d § 93. Garrozi v. Dastas, 204 U.S. 64, 27 S.Ct. 224, 51 L.Ed. 369 (Puerto Rico).

In New York Life Ins. Co. v. Bank of Italy, 60 Cal.App. 602, 214 P. 61 (Cal.), the court stated the rule as follows:

"In our own state a husband's testamentary and dispository powers over the community property are limited and restricted. Under section 172 of the Civil Code, where a gift is made by him of such property without the written consent of the wife, the transaction is a nullity as to her. Accordingly, it has been held that, where a testator after marriage took out an insurance policy, on which he paid his premiums from his earnings, the insurance money was common property, to one-half of which the wife was entitled as survivor. In re Stans' Estate, Myr. Prob. 5. To the same effect is the case of In re Webb, Myr. Prob. 93, which lays down the doctrine that, where a decedent has paid the first third of the amount of premiums on the policy of insurance out of his earnings before marriage, and the remainder from those made subsequent thereto, one-third of the proceeds of the policy belong to his separate estate and the remainder to the common property." Page 62.

In McBride v. McBride, 11 Cal.App.2d 521, 54 P.2d 480 (Cal.), the California court restated the rule at page 481, as follows:

"Defendant further argues that, because the husband had a right to change the beneficiary, without the latter's consent, all rights of the latter terminated when such change was made as fully as though the contract had been canceled. It is also argued that, because the insurer was a so-called assessment company, each new premium payment initiated a new policy of insurance. There is no merit in these contentions. The contrary was expressly declared in New York Life Insurance Co. v. Bank of Italy, supra, and in Modern Woodmen of America v. Gray, 113 Cal.App. 729, 299 P. 754, 755. * * * Accordingly the community share was determined to be only such proportion of the proceeds of the policy as the funds of the community paid for." Page 482.

In *McBride* the court computed the interest of the parties in accordance with the above rule and awarded the spouse on the basis of the proportion of the proceeds of the policy as paid for from community funds; Scott v. C. I. R., 374 F.2d 154, 161 (9 Cir., 1967).

In the instant case, the policy in question was in continuous force after the issuance thereof by the company and the payment of premiums for a period of eight years, five months, or a total period of 101 months. The total amount of premiums paid by the deceased, Sullivant, from the date of inception of the policy until his death, September 15, 1970, was $1,399.86 computed at $13.86 per month.

The premiums paid by the deceased during the marriage relationship with the defendant, Alida Sullivant, were for a period of two years and four months, or a total period of 28 months. The total amount paid by the deceased from community property funds during the existence of the marriage relationship with Alida Sullivant was $388.08. The total amount which deceased, Sullivant, paid in premiums on the policy after the marriage relationship with Alida Sullivant had ended was the sum of $1,011.78. The share of the insurance to which the defendant, Alida Sullivant, is entitled should, therefore, be computed on the basis of $388.08 as to the total of $1,399.86. $388.08/$1,399.86 of $7,405.61 amounts to $2,053.04 of which defendant, Alida Sullivant, is entitled to

one-half, on account of her community interest therein, or $1,026.52.

$1,011.78/$1,399.86 of $7,405.61 amounts to $5,352.57 which amount the defendant, Betty Jean Sullivant, is entitled as beneficiary of the policy, together with the one-half of the community interest $1,026.52, or a total of $6,379.09.

This opinion incorporates the Court's findings and conclusions pursuant to Rule 52 of the Federal Rules of Civil Procedure.

A judgment will be entered in accordance with this opinion, except for an award of attorney's fees for the plaintiff herein, if any, and costs.