[Civ No. 31179.   Second Dist., Div. Five.   Mar. 27, 1968.]

UNION CENTRAL LIFE INSURANCE COMPANY, Plaintiff, v. MAVIS C. JANSSEN, Defendant, Cross-complainant and Appellant; KARLA G. PEPE, Defendant, Cross-complainant and Respondent.

A. J. Weiss for Defendant, Cross-complainant and Appellant.

James Murray for Defendant, Cross-complainant and Respondent.

KAUS, P. J.—The Union Central Life Insurance Company ("Union") interpleaded the sum of $50,000, payable by it on the death of Raymond V. Pepe. The contesting claimants are Mavis C. Janssen. the former wife of the decedent, and Karla G. Pepe, his widow. After discharging Union from any further obligation under its policy upon deposit of the proceeds in court, the superior court granted Karla's motion for summary judgment. Mavis appeals.

## Facts

Several declarations were filed in support of and opposition to Karla's motion. The facts disclosed therein are not in conflict.

The chronology of events is as follows:

*April 15, 1953.* James B. Lansing Sound, Inc. ("Lansing") entered into a group life insurance contract with Occidental Life Insurance Company of California ("Occidental") by the terms of which policy the lives of Lansing's executives were insured.

*September 1, 1955.* The deceased was classified as an executive of Lansing and became eligible to participate in the group life insurance program provided by the Occidental policy.

*April 25, 1956.* The deceased signed an "enrollment card for group insurance." On this card, which we shall call the Occidental enrollment card, he designated Mavis as his beneficiary.

*May 9, 1956.* Just two weeks after the deceased had designated Mavis as his beneficiary, a final California judgment of divorce was entered dissolving their marriage.

*January 7, 1961.* The deceased married Karla.

*July 19, 1961.* Preceding that date Lansing had started negotiations with Union which led to the replacement of the Occidental policy by the one issued by Union. The Occidental

policy was canceled effective July 19, 1961. In connection with the changeover the Occidental enrollment cards, including the one signed by the deceased, were sent to Union which retained them in its files. The deceased never signed a new enrollment card for Union.[1] A certificate of insurance under the Union policy was issued to the deceased, effective June 23, 1961. When thus issued the designated beneficiary was "Mavis C. Pepe, wife."

*August 15, 1964.* Deceased died.

*August 16, 1964.* William H. Thomas, the president of Lansing, his secretary, John Edwards, the treasurer of Lansing, and the parents of Karla met in the decedent's office. His desk was locked. No one had a key. It was opened with tools. The Union certificate No. 64 was found. Mavis' name and most of the designation "wife" were erased and the words "Karla G. Pepe, wife" were typed in the space for the designation of the beneficiary. There is no evidence when this was done, nor, for that matter, who did it.

### Discussion.

The Union policy contains the following provision with respect to the designation of the beneficiary: "The insured has the right on his sole signature to designate a beneficiary and to direct that the death benefits be paid under a settlement option (Section F) and to change the beneficiary or method of settlement at any time and from time to time by written notice in form acceptable to the Company. Such sums

---

[1]The declaration of Lawrence H. Forsch, the District Group Sales Director of Union states, *inter alia*: "That the name of MAVIS C. PEPE was placed upon the said Certificate No. 64 as beneficiary by means of submission by James B. Lansing Sound, Inc. of a certain document presently in the possession of UNION CENTRAL entitled 'Enrollment Card for Group Insurance' which has printed the words 'Mavis C. Pepe' after the term 'Name of Beneficiary' and which bears the date '4-25-56' and the "signature of 'Raymond V. Pepe. . ...' "

A declaration in support of Karla's motion alleges, among other things: "I have seen a copy of group insurance enrollment card, Union Central Life Insurance Company, policy no. G-3721, naming James B. Lansing Sound, Inc. as employer or policy holder and naming Raymond V. Pepe as insured and that card does not contain the signature of Raymond V. Pepe, or anyone else, in the space designated for the placing of a signature. A copy of that group insurance enrollment card is attached hereto and made a part hereof." The attached Union enrollment card is reasonably similar to the one that had been given to Occidental. In the space for the designation of the beneficiary the name of "Mavis C. Pepe" is typed in. She is described as "wife." The card is unsigned and undated. Across the space where the signature would be is a stamp reading as follows: "CERT. Issued August 11, 1961." The declaration does not state whether the card was found in the records of deceased, Lansing or Union.

as may be payable on the insured's death will be paid to the beneficiary designated by him subject to the following limitations. (a), If no beneficiary was designated . . . the amount due will be paid to the deceased's spouse if living. . . .''

■ Karla's argument is predicated on the assumption that the deceased never designated a beneficiary ''on his sole signature.'' We cannot agree that there is no triable issue on that point. The quoted policy provision speaks of a ''form of designation acceptable to the Company.'' The recital of facts suggests very strongly that the practical interpretation by the parties involved was that Union recognized the written designation on the Occidental enrollment card as the designation of beneficiary required by the terms of its policy. (*Crestview Cemetery Assn.* v. *Dieden*, 54 Cal.2d 744, 752-754 [8 Cal.Rptr. 427, 356 P.2d 171].)

Although, as we said at the outset, the facts disclosed by the various declarations are not in conflict, they are not the ultimate facts which will decide this controversy. One of these ultimate facts surely is whether or not the deceased designated Mavis as the beneficiary ''on his sole signature.'' Conflicting inferences with respect to that fact can be drawn from Union's use of the Occidental enrollment card in connection with the issuance of its certificate of insurance to the deceased. We do not mean to suggest that the inference that Union treated the Occidental enrollment card as the signed designation of beneficiary under its policy is compelling, but it is one which a trier of facts may draw from this record. It may well be, as Karla suggests in her pleadings, that the delivery of the Occidental enrollment cards to Union was nothing more than the furnishing of a mailing list so that Union would know where to send new enrollment cards to be signed by the Lansing executives. This only means, however, that there is an issue to be tried, an issue that cannot be resolved by the procedural shortcut sought by Karla. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.*, 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; cf. *Travelers Indemnity Co.* v. *McIntosh*, 112 Cal.App.2d 177, 181-182 [245 P.2d 1065].)

■ Karla does not even suggest that the typewritten change on the certificate necessarily effected a change of beneficiary in her favor. In any event, it is obvious that it cannot be so considered at this stage. While there is a strong inference from the facts recited above that the change was made either by the deceased himself or with his authority, there is no evidence one way or another concerning the time when it

was made. A little detective work before the trial might give the court somewhat more information on that point. The time when the change was made is vital because under the authorities—see for example *Pimentel* v. *Conselho Supremo, etc. Portugueza*, 6 Cal.2d 182, 188 [57 P.2d 131]—one of the exceptions to strict compliance with policy provisions regarding a change of beneficiary is that "If the insured has pursued the course pointed out by the laws of the association, and has done all in his power to change the beneficiary, but before the new certificate is actually issued he dies, a court of equity will treat such certificate as having been made." (*Ibid.*, p. 188.)

The judgment is reversed.

Stephens, J., and Aiso, J. pro tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.